## ASHTON W. GARRETT et al. v. R. N. WILTSE, Appellant.

### Division One, December 6, 1913.

1. **CONVEYANCE: To Daughter and Heirs: Fee to Daughter.** A deed between a father and "Mrs. Laura Alice Garrett and heirs," witnessing that the said father, in consideration of the sum of five dollars to him paid "by the said parties of the second part," and conveying "unto the said parties of the second part, and to their heirs and assigns forever," certain lands, and reciting in the *habendum*, "unto her, the said party of the second part, and to her heirs and assigns forever," and warranting the title "unto her, the said party of the second part, her heirs and assigns," conveyed the title to her in severalty, and not to her and her three children then living, as cotenants.

2. ———: **Intention: All Clauses.** The intention of the grantor is the soul of the deed, and that intention is to be gathered from the whole instrument, and when ascertained must be given effect, if not in contravention of some positive rule of law.

3. ———: ———: **Priority of Clauses.** Much of the old learning concerning the stress to be put upon one clause of a deed over another, and concerning the weight and significance to be given words because they appear in one clause and not in another, has been exploded by the rule that requires the instrument to be considered as a whole, and the grantor's intention to be gathered from its four corners, and as so ascertained to be enforced.

4. ———: **To Daughter and Heirs.** The words "and heirs" in a deed by a father naming a daughter "and heirs" as "parties of the second part," instead of having the office of cutting down her estate to less than a fee, look the other way. The word "heirs" is a word of inheritance, and connects itself with the idea of an ancestor and descent cast, and, while no longer necessary under the statute to create a fee in the grantee, at common law a deed without it created only a life estate. The use of the words "and heirs" or "and heirs and assigns," under accepted rules of construction is no longer allowed as in anywise making doubtful the intent of the grantor to pass a fee simple title to the named grantee.

5. ———: ———: **Words of Limitation.** The words "and heirs" used in a deed may mean words of purchase, but they will not

be given that meaning unless the context manifestly demands it, and the burden is cast upon the person who claims they are words of purchase to rebut the presumption that they are words of limitation, by which is not meant the individuals, but an estate descendible to the heirs described.

6. ———: ———: **Heirs Living But Not Named.** Where the deed named a daughter "and heirs" as "parties of the second part," and she at that time had three children and a husband living, it is of significance, in arriving at grantor's intention, that he did not name these children. If he desired them to take as tenants in common with her, the natural course would have been to name them, and not ambush and screen his intention by use of words importing to the contrary.

7. ———: ———: **"Parties" of Second Part: "Their" Heirs.** Where a deed names a father as party of the first part, and a daughter "and heirs" as "parties of the second part" and grants certain lands "unto the said parties of the second part and their heirs and assigns forever," it would be a loose and unsound construction to give to those awkward and inartificial grammatical forms of expression the meaning of importing more than the one daughter named. The slips of the pen in slipshod conveyancing are too many to hinge a title or a decree alone on "parties" and "their heirs."

8. ———: ———: ———: **Habendum.** The present office of the *habendum* clause of a deed is allowed to be to clarify and remove ambiguities and to smooth away inconsistencies. If the deed names a daughter "and heirs" as "parties of the second part" and grants "unto the said parties of the second part and their heirs and assigns forever" certain lands, the *habendum* clause, which says "unto her the said party of the second part and to her heirs and assigns forever" and warrants the title "unto her, the said party of the second part, her heirs and assigns," dissipates the use of the plural number in the granting clause, and explains "their" to mean "her."

9. ———: ———: **Intention: Aliunde Explanation.** A grantee in a deed is bound to take notice of the terms used in a recorded deed to his grantor; and where an innocent purchaser for value from his grantor dealt with the deed to that grantor's grantor on the faith and credit of its words as recorded, testimony that the grantor of such grantor (his daughter, whose deed named her "and heirs" as "parties of the second part") stated before and at the time of the execution of his deed to said daughter that he intended to tie up the land so that she and her husband could not convey the fee, is not competent evidence. As to such innocent purchaser of the daughter, without notice, the father presumably wrote in the deed to her all he intended; and if on its face it made her the sole grantee

Garrett v. Wiltse.

in fee simple, a deed by her and her husband conveyed the title to such purchaser, whatever may have been the oral declarations of her father of his intention at the time, before, and subsequently to the execution of his deed to her.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Eugene Silverman* and *Charles F. Strop* for appellant.

(1) The use of the word "heirs" in the premises of the deed carries no special significance and in nowise militates against the well-settled rule that wherever such words are used they are intended and presumed to be intended to be words of limitation and not words of purchase. It is very appropriate that these words should appear in the premises or granting clause of the deed. 3 Washburn on Real Property (5 Ed.), par. 6. (2) The term "heir" is a legal term and is used in a legal sense with a fixed meaning. The word has a technical signification and when unexplained and uncontrolled by the context must be interpreted according to its technical sense. 21 Cyc. 418, sec. 1. (3) The word "heir" in its natural signification is a word of limitation, and is not to be taken nor construed to be used by the grantor as a word of purchase, but is to be presumed to be used as a word of limitation unless a contrary intention appears. But unless there be other controlling words clearly showing that a contrary meaning was intended by its use, the merely presumed intention will not control that significance of the word and it will not be treated as a word of purchase unless the intent to so use it is manifest. 21 Cyc. 418, 423, 424, 425, 426. (4) If it be conceded, which it is not, that an ambiguity arises in the granting part of the deed it then necessarily follows that such ambiguity can be explained or made

plain by the *habendum*. The *habendum* is clear and carries full explanation to the entire deed itself. The use of the *habendum* in construing the deed is well recognized in this State. Green v. Sutton, 50 Mo. 192; Linville v. Greer, 156 Mo. 397; Utter v. Sidman, 170 Mo. 284; Rines v. Mansfield, 96 Mo. 399; Warne v. Brown, 102 Pa. St. 347; Meacham v. Blaess, 104 N. W. (Mich.) 579. (5) The real intention of the grantors should be derived by construing the deed from its four corners. Howell v. Sherwood, 242 Mo. 536; McCollock v. Holmes, 111 Mo. 347. (6) Not only under the general rules as laid down in the cases, supra, is it certain that defendant Wiltse holds a fee simple title and that the Whitson deed was sufficient to convey the fee simple title but especial attention is called to the Michigan case, supra, and also to Tygard v. Hartwell, 204 Mo. 200.

*Brown, Cell & Myers* for respondents.

(1) The court construes the deed under which respondents claim, by its own terms alone, therefore the admissibility of parol testimony is not a question here. Respondents neither contend nor concede that there is an ambiguity in the granting portion of the deed. Respondents claim that that part of the deed designates one grantee by name, and other grantees as a class, calling that class "heirs," but that appellant's contention against the manifest intention of the grantor made it proper, since clear and convincing extrinsic evidence was at hand, to give the court the advantage of a knowledge of the surroundings and of the intention of the grantor. And since the *habendum* omits the class of grantees and runs only to the grantees designated by name in the granting clause, respondents had the right to introduce parol testimony to show that the grantor did not intend in the *habendum* any repugnance to the granting clause; and had a right to introduce parol testimony that they, the

respondents, were the individuals who made up the class of grantees mentioned in the granting clause. 9 Ency. Ev., 373-377; Balfour v. Canal & Irrigation Co., 109 Cal. 221. (2) It is usual and convenient that parties in a deed be designated by their names, but it is not absolutely necessary, and they may be designated by description alone. Therefore a grant to "heirs," "sons," "daughters," "children," "issue" or "next blood" is sufficiently certain, and is good. Arthur v. Weston, 22 Mo. 380. (3) Plainly the word "heirs" is used in the premises in such way as to preclude any presumption that it is used as a word of limitation. Fanning v. Doan, 128 Mo. 323. (4) The word "heirs" is used in the deed in question in the sense of "children." The two words are construed as interchangeable terms in this State. Chew v. Keller, 100 Mo. 369; Waddell v. Waddell, 99 Mo. 345; Cross v. Hock, 149 Mo. 341; 21 Cyc. 425-426. (5) In the deed under which respondents claim, Laura Alice Garrett and heirs are designated as parties of the second part; the consideration is paid by parties of the second part; the grant is to parties of the second part and their heirs and assigns. Therefore, the word "heirs" is used in the same sense as "children" and is used as a word of description, and hence of purchase, and not of limitation. Hamilton v. Pitcher, 53 Mo. 334; Rines v. Mansfield, 96 Mo. 399; Fanning v. Doan, 128 Mo. 323. (6) If a deed grants title to two parties, the one will not be deprived of his interest by the covenants and warranty running to the other alone; and if the *habendum* be repugnant to limitations appearing in the premises it will be ineffectual to control, and may be rejected entirely when inconsistent with other clauses of the deed. Hunter v. Patterson, 142 Mo. 320; Utter v. Sidman, 170 Mo. 284. (7) Laura Alice Garrett and her children *in esse* took as tenants in common. Hamilton v. Pitcher, 53 Mo. 334; Fanning v. Doan, 128 Mo. 323. (8) Richard M. Gar-

rett by joining as the husband of Laura Alice Garrett in the deed to appellant conveyed only his interest under his marital rights. His interest acquired under the laws of descent, through the death of his daughter Annie, remained in him. Sec. 2788, R. S. 1909.

LAMM, J.—This is a suit under section 650, Revised Statutes 1899, to try and determine title to the west half of the northeast quarter of section 2, township 56, range 34, containing eighty-three acres situate in Buchanan county.

The case is this: All parties claim under William M. Whitson, deceased, the common source of title. In 1893 William conveyed by warranty deed, duly recorded, to his married daughter, Laura Alice Garrett, "and heirs," for a consideration of five dollars. (This deed is the bone of contention and its terms will hereafter appear.) At the date of that conveyance Laura Alice had three children. Eight years afterwards, in March, 1901, Laura Alice and her spouse, Richard M., by warranty deed put of record, conveyed to defendant for a consideration of $3500, and put him in possession. At the date of this latter deed another child, Dixie, had been born to her and Richard. This child died prior to suit. Both deeds purport to convey the whole title. In 1908, Laura Alice being yet alive, her said spouse and two of her said children in being when Whitson conveyed to her, and the husband of one now dead, brought this suit to establish an interest in the land.

The court decreed that Laura Alice took title under the Whitson deed as tenant in common with her three children then in being—one fourth to each. Further, one of said children, a married daughter, having since died and left no children, it was adjudged that defendant stood seized as grantee of Laura Alice of an undivided one-fourth plus an undivided one-thirty-second, the latter coming to Laura Alice as heir of her

deceased daughter and passing to defendant under her
said warranty deed; and, on the theory indicated, ad-
judged to plaintiffs each a specified undivided interest
as tenants in common.

Other terms of this decree may become material
later on, if we hold against defendant's principal con-
tention presently stated.

The case runs on the theory that defendant bought
in good faith for full value and took and held posses-
sion under his deed claiming the fee; so that, unless
the deed from Whitson, *ex vi termini*, is to be con-
strued as notice of an interest in the "heirs" of Laura
Alice, he had no notice of any such interest, this not-
withstanding there was testimony showing declara-
tions of Whitson made before and at the time of the
execution of his said deed to the effect that he intended
to tie the land up so Laura Alice and her spouse could
not convey the fee, and later declarations to the effect
that he had done so. But none of these verbal acts or
declarations were brought home to defendant. His
counsel in due time objected to them and, the trial court
reserving its ruling, the record shows that at the close
of the case the objections were neither ruled on nor
was the decree founded on the testimony objected to.
It was founded on the face of the deed itself.

The main question is: (1) Did the deed from Whit-
son to Laura Alice, *on its face*, and by virtue of its
terms, convey the whole title to her? Defendant con-
tends it did. Plaintiffs contend *contra*. The court
held with plaintiffs, and defendant appeals.

A subsidiary question is: (2) If we refuse to
follow the court's construction of the deed but hold
*contra* and with defendant, then (this not being a
suit in equity to reform the Whitson deed and the in-
tentions and declarations of the grantor *aliunde* the
deed not having been brought home to defendant be-
fore his purchase so as to charge him with notice)

is the testimony of grantor's said intentions and declarations admissible against defendant?

There are other nice questions arising on other hypotheses (for instance, whether Richard M. is bound on the covenants of warranty in his deed to defendant, whether Laura Alice did not take a life estate under the Whitson deed, and whether the "heirs" did not take as *a class* which opened and let in the child born after such deed and dying before suit) but none of them are important if we hold with defendant on the two first formulated. To those we address ourselves.

The Whitson deed, omitting acknowledgment not questioned, best speaks for itself (we italicize the words on which the court's construction must stand or fall), viz.:

"*Warranty Deed.* This deed, made and entered into this twenty-fifth day of March, in the year of our Lord, eighteen hundred and ninety-three, by and between William M. Whitson (a widower) of the county of Buchanan and State of Missouri, of the first part, and Mrs. Laura Alice Garrett *and heirs* of the county of Buchanan and State of Missouri of the second part.

"Witnesseth: That the said party of the first part, for and in consideration of the sum of five ($5.00/100) dollars, to him in hand paid by the said *parties* of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained and sold, and by these presents does give, grant, bargain, sell, convey and confirm unto the said *parties* of the second part, and to *their* heirs and assigns forever, the certain tract, piece or parcel of land, lying and being in the county of Buchanan and State of Missouri, to-wit:

"The west half of the northeast quarter of section No. two (2) in township fifty-six (56) of range thirty-four (34) containing eighty-three acres of land.

"To have and to hold the said tract, piece or parcel of land with all the privileges and appurtenances

thereunto belonging, or in anywise appertaining unto
her *the said party of the second part,* and to *her* heirs
and assigns forever; and the said party of the first
part for himself, his heirs, executors and administra-
tors, does covenant and agree that he will warrant and
forever defend the title to the said tract, piece or par-
cel of land, and every part thereof, unto *her the said
party of the second part, her heirs* and assigns, against
the lawful claim or claims of all persons, whomsoever.

"In testimony whereof, the said party of the first
part has hereunto set his hand and seal the day and
year first herein written.   W. M. Whitson (Seal)."

Assuming that the "premises" of a deed are those
parts preceding the *habendum* clauses (Utter v. Sid-
man, 170 Mo. l. c. 294) it will be observed that the
words, "and heirs," are used in that part of the prem-
ises reciting the parties. When we come to the granting
clause the plural form is used for nouns and pronouns
in connection with the second party (thus, "parties"
and "their heirs"), and when we come to the *haben-
dum* and warranting clauses the singular form is used
(thus, "her, the said party of the second part and to
her heirs," and "unto her, the said party of the sec-
ond part, her heirs and assigns").

On such record we are of opinion the court erred
in construing the deed, and that, under accepted rules
of construction, the fee simple estate passed to Laura
Alice Garrett.   This because:

I.   (a)   Not only is the general maxim applicable,
viz., that the intention of the man is the soul of the
instrument (*animus hominis,* etc.), but the guiding
rules of construction for both deeds and
wills are that the intent must be got at
and given effect (if not in contravention
of some positive rule of law), and that words used are
to be understood in the sense indicated by the whole
instrument, i. e., that the intent must be gathered, not

Conveyance:
Intention.

from one clause or another, but from the four corners of the instrument. [Chew v. Keller, 100 Mo. l. c. 369; Utter v. Sidman, supra.]

Applying those cardinal rules, we must take the words of grantor in all the clauses of his deed as indicating his intention. Much of the old learning concerning the stress to be put on one clause of a deed over another and concerning the weight and significance to be given words because they appear in one clause and not in another is exploded. Commenting on the modern as distinguished from the old doctrine in that regard, it was well said by MARSHALL, J., in Utter v. Sidman, supra: "The modern rule, which prevails in this State, is much simpler and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it no matter in what part of the instrument it is found."

(b) The words "and heirs," used in the premises of the deed, following Laura Alice's name, are stressed as of significance by respondent; but those words have no office to cut down her estate to less than a fee. They point the other way. The word "heirs" connects itself logically with the concept of *inheritance,* with the idea of an ancestor and descent cast; for no man is heir to the living man, *Nemo est haeres viventis.* Accordingly, at common law the word "heirs" was necessary to pass to a grantee an estate of inheritance. Without it the estate conveyed was for life. True, it is no longer necessary to use the word "heirs" to pass a fee simple. The common law in that regard is exploded by section 2870, Revised Statutes 1909, reading:

The Word Heirs.

"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant."

But whilst the use of the word "heirs" is not now essential in passing a fee to the named grantee, yet its use or that of the words "and heirs" or "heirs and assigns" is not to be allowed, under accepted rules of law, as in anywise making doubtful the intent of a grantor to pass a fee simple title to the named grantee. [Gannon v. Albright, 183 Mo. l. c. 248 et seq.] Such words, unless controlled or modified by the context, but hark back to and connect themselves with the usages, the learning and the rules of common law conveyancing. They are highly technical and have a fixed meaning and when used in conveyancing, unless manifestly controlled by the context, as said, are held to be words of limitation and not words of purchase. [21 Cyc. 418.] Words of limitation, in this technical sense, mean words "which do not give the estate imported by them originally to the heirs . . . described, or to whom they are expressly directed, but only extend the ancestor's estate . . . to an estate of inheritance descendible to the heirs described. . . ." [Fearne on Rem., 77.] And on page 78: "When the words heirs, etc., operate only to expand an estate in the ancestor, so as to let the heirs described into its extent and entitle them to take derivatively, through or from him, as the root of succession, or person in whom the estate is considered as commencing, they are properly words of limitation; but when they operate only to give the estate imported by them, to the heirs described, originally and as the persons in whom that estate is considered as commencing, and not derivatively from or through the ancestor, they are properly words of purchase. . . . In general, words

of purchase are those, by which, taken absolutely without reference to, or connection with, any other words, the estate first attaches, or is considered as commencing in the person described by them; whilst words of limitation operate by reference to or connection with other words, and extend or modify the estate given by those other words.''

Undoubtedly the words ''and heirs'' may be used in deeds and wills in the sense of sons, daughters and children, etc., that is, as words of purchase, when the context demands such construction, but the burden is thrown upon him who contends they are words of purchase to rebut the presumption that they are used as words of limitation, i. e., as intended to mean not individuals but quantity of estate and descent, which in a fixed legal sense they import, and the intent not to use the words in their legal and fixed sense must be unequivocal and not to be misunderstood. [Guthrie's Appeal, 37 Pa. St. 13 et seq.]

We conclude, then, that respondent's case does not prosper on the theory of a controlling significance in his favor in the use of the words ''and heirs'' in the premises of the deed.

Look at it from another viewpoint. As said, there were three children in being, born of Laura Alice by Richard, her husband, at the time of the Whitson deed. Now, in construing a deed it is sometimes worth while to take into account what the grantor should say but does *not* say as well as what he does say in getting at his intent. This grantor in making a conveyance on which, when spread of record, the world might act, named none of those children. If he desired them to take a present interest as tenants in common with their mother why did he not say so and name them? Is that not the usual way? Why, in dealing with grandchildren, did he ambush and screen his intent by use of a term importing to the contrary? In speaking to that phase of the matter the words of VALLIANT, J., in Ty-

gard v. Hartwell, 204 Mo. l. c. 206, are apposite thus:
"It would be a very strained construction to say that
it was the intention of the parties to this deed to con-
vey the land to James F. White and his children as
tenants in common. If such had been the intention the
natural course would have been to have inserted the
names of the two children then living in the granting
clause of the deed as grantees. If it was the intention
to include not only those then in being but those there-
after to be born, then the idea of a tenancy in common
must be excluded because the unborn children could
not be made tenants in common in an estate presently
created. [Kinney v. Mathews, 69 Mo. 520; Rines v.
Mansfield, 96 Mo. 394.]"

(c) When we come to further consider the grant-
ing clause of the deed, we find plural forms are used,
viz., "parties of the second part," "parties of the sec-
ond part and to their heirs and assigns forever." Much
is made of that feature. But we think it
loose and unsound construction to give to
those awkward and inartificial grammat-
ical forms the labored significance insisted upon by
learned counsel for respondent. Their argument runs
after this fashion: That the phrase "parties of the
second part" should be held to import more than one
grantee, to-wit, the heirs of Laura Alice then in being.
Now, even in construing public statutes, the rule is to
include the plural in the singular number and *vice
versa*. Likewise with gender, when the form is mas-
culine it includes the feminine. But it would be un-
profitable to pursue the matter from a philosophical
standpoint and point out why in so grave a matter as
title the plural form is of little value. The slips of the
pen are too many in slipshod conveyancing to hinge a
decree alone on "parties" and "their heirs." In
this case, however, let the grantor tell his own mean-
ing. To do so is allowable exposition; for does not
every man know what he wants to say better than the

other fellow? It will be perceived that presently he recurs to the same subject-matter in the *habendum* clause and therein he makes all plain by speaking of "her, the said party of the second part," and "to her heirs and assigns forever"—not once but twice—and it must be held that whatever ambiguity arises by the prior use of the plural number in the granting clause is dissipated by the use of the singular number in the *habendum* clause. Moreover, why should Whitson not *warrant* to his grandchildren as well as to their mother, if he intended to *grant* to them? If his bounty took them in, why did he exclude them in his covenants of assurance? Why caress with one hand and smite with the other? To hold otherwise than as indicated would contravene a settled rule of construction, and put a

**Habendum Clause.**
harsh and strained construction on the deed taken as a whole. It would magnify a pinprick of mere possible inadvertence into pivotal and controlling substance, and build this deed up around a shadowy speculation. We think we are on safe ground to say that whatever was the technical function of the *habendum* clause of a deed in olden times, its present office may be allowed to be to clear up the conveyance by clarifying and removing ambiguities, and smoothing away inconsistencies. It will even control or modify the granting clause when by such control or modification the intent of the grantor as expressed in his words is made plain and effectuated. [Utter v. Sidman, 170 Mo. 284, and cases therein cited and analyzed; Linville v. Greer, 165 Mo. l. c. 397; Grooms v. Morrison, 249 Mo. l. c. 554; Rines v. Mansfield, 96 Mo. 394; Williamson v. Brown, 195 Mo. l. c. 337; McCullock v. Holmes, 111 Mo. 445; Meacham v. Blaess, 141 Mich. 258; Green v. Sutton, 50 Mo. l. c. 192.]

II. The conclusions already reached and announced bring us to the final question: What proba-

tive force is to be given to the declarations (herein-
before mentioned) of Whitson, made before, at, and
after his conveyance to Laura Alice?

Mark, we are not dealing with a case wherein
Whitson is suing his daughter in equity to correct his
deed, or wherein the children of Laura Alice are su-
ing their mother to correct such deed on some equita-
ble ground like mistake, or wherein the
Recorded Deed: children are suing the mother in equity
Evidence
Aliunde of (before her conveyance) to adjudge ti-
Meaning. tle as between themselves. The case
up is one against an innocent purchaser
of the land, who dealt with it and the mother on the
strength of the title the deed imported to convey to
her by its own words, and not otherwise—dealt on the
full faith and credit due the record of the deed, and not
otherwise. Under such circumstances, for the trial
court to get at the intent of grantor (not from the
words he set down in the instrument at the time to be
presently blazoned forth on the records in the office
of the recorder of deeds, but) from the admissions of
Whitson of which defendant had no notice, will not.do.
Defendant was bound to take notice of the terms of
the Whitson deed when recorded. [R. S. 1909, sec.
2810; Seilert v. McAnally, 223 Mo. 1. c. 518.] Whitson
contemplated that form of notice when he executed his
deed. The law held the same end in view in the reg-
istry acts. He is charged, too, with constructive no-
tice of everything contained in recorded deeds that lie
in and make up the chain of title under which he holds.
[Case v. Goodman, 250 Mo. 1. c. 115, and cases cited.]
So, if he had had actual notice that his grantor held
a base fee, or one subject to outstanding equities or
rights not disclosed by the deed records or that there
was a mistake in the deed, that would be another mat-
ter. But, as said, no such case is here; and we know of
no principle of real estate law that would permit the
title of a bona-fide purchaser to be affected or impaired

in the way proposed. As to defendant, presumably, Whitson wrote into that deed all he intended to. Since the written word remains and the spoken word flies, when parties sit down to write a contract they are presumed to set forth the whole of it. Defendant could rest on that presumption of law; for no man is held to be, or need to be, wiser than the law. He is presumed to know it, but not to be wiser than it. If, then, the deed when taken as a whole bore on its face notice of a base fee or lesser estate than a fee in his grantor, or words putting defendant on inquiry, he must abide the fact or pursue the inquiry. But we have held the contrary to be the fact in the first paragraph, and must rule the offered testimony of no probative force.

The disposition made of questions discussed, makes other questions dealt with in briefs unimportant.

Let the judgment be reversed and the cause remanded with directions to find against plaintiffs and decree title in defendant. It is so ordered. All concur.