Magnolia McCLENDON, Appellant,

v.

Herman JOHNSON, Respondent.

No. 47278.

Supreme Court of Missouri,
Division No. 1.

July 11, 1960.

W. W. Sleater III and Suelthaus & Krueger, St. Louis, for appellant.

Howard Elliott, Edward D. Weakley and Boyle, Priest, Elliott & Weakley, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Action to determine title to and, in the alternative, for partition of certain real estate in the City of St. Louis, Missouri, to wit: Lot 66 of Finney Avenue Addition, in Block 3746, together with improvements thereon, known as 4256 W. and 4256a W. Cook Avenue. Count one of the petition alleged that plaintiff, Magnolia McClendon, was the fee simple owner of said lot and sought to quiet her alleged title as against any claim of title asserted by defendant, Herman Johnson. Count two prayed that should the court ascertain and adjudge title to be in both plaintiff and defendant, then that partition be decreed and the real estate ordered sold and the proceeds divided between the parties as their interests appeared. Defendant, by answer and cross bill, denied plaintiff's title to any portion of said real estate and asserted that defendant was the record and fee simple owner of an undivided one-half interest therein. Plaintiff, in reply, alleged that the record title asserted by defendant was procured by fraud, undue influence and coercion and through an instrument that was testamentary in character, without consideration and was void. The trial court found and held that plaintiff and defendant were the owners of said real estate as tenants in common, each owning an undivided one-half interest, and ordered partition and sale thereof. Plaintiff appealed.

Although other questions are presented and hereinafter considered, the essentially basic issue turns upon the proper construction and validity of a deed appearing in the chain of title, whereby the real estate was conveyed to Alexander Johnson and plaintiff, Magnolia McClendon, "as joint tenants and not as tenants in common, with right of survivorship." Thereafter, Alexander conveyed his interest in the joint tenancy to himself and to defendant, Herman Johnson, "as joint tenants, and not as tenants in common." Plaintiff contends, in substance, that, by virtue of the conveyance to her and Alexander as joint tenants with right of survivorship, she and Alexander (now dead) held mere life estates in the land until the fee vested in plaintiff as the survivor of them, and that the deed made by Alexander to defendant conveyed nothing more than Alexander's life estate. Defendant contends that the conveyance to Alexander and Magnolia vested in them a classical joint tenancy, whereby they became the fee simple owners of the property as joint tenants and that, when Alexander conveyed his interest therein to himself and defendant as joint tenants, the joint tenancy theretofore existing between Alexander and Magnolia was severed by operation of law and Alexander and defendant became the owners of an undivided one-half interest in said real estate as joint tenants; and that, upon the death of Alexander, defendant became and is now the owner of an undivided one-half interest in the real estate.

Alexander Johnson was the father of plaintiff Magnolia and the uncle of defendant Herman. On and prior to September 17, 1947, Alexander owned the real estate in fee. The several subsequent conveyances thereof were as follows:

(1) On September 17, 1947, Alexander, joined by his wife, Lula, executed and delivered to plaintiff Magnolia their general warranty deed to the real estate in question, reserving unto themselves and the survivor of them a life estate therein;

(2) On April 26, 1949, by deed delivered and duly recorded, Lula (from whom Alexander had obtained a divorce) quitclaimed all of her right, title and interest in said real estate to plaintiff;

(3) By general warranty deed dated July 23, 1949, and recorded August 15, 1949, plaintiff Magnolia and Alexander, for a recited consideration of $10, conveyed said real estate to Henry F. Brauer (obviously a party used as a conduit of title) of the City of St. Louis;

(4) By quitclaim deed dated August 10, 1949, recorded August 15, 1949, Henry F. Brauer, for a recited consideration of $10, conveyed the property to Alexander and plaintiff Magnolia "as joint tenants and not as tenants in common, with right of survivorship, * * * to have and to hold the same, * * * as joint tenants and not as tenants in common, with right of survivorship, and to their heirs and assigns forever";

(5) By quitclaim deed dated and recorded March 29, 1955, Alexander, for a recited consideration of $1, conveyed to "Alexander Johnson and Herman Johnson (defendant herein), as joint tenants, and not as tenants in common, * * * all my right, title and interest in and to [the property] to have and to hold the same, * * * unto [Alexander and Herman], and to the survivor of them, and to the heirs and assigns of such survivor forever."

At trial, plaintiff testified: Alexander had divorced his second wife, Lula, and lived in the property. When he retired from railroad work (as a porter) in 1947, he was in pretty good health, but his eyes were getting bad. About eight years ago, he had one eye removed and the sight in the other was not good. He had been ill for the past three or four years before his death on March 8, 1957, at the age of 90 years, but not bedfast. (A certified copy of his death certificate, the factual data for which was admittedly furnished by plaintiff, states that he was 76 years of age at his death.) He could read until the latter years of his life but could not see to write too well.

On cross-examination, plaintiff stated that when she furnished the data from which the death certificate was made she did not know Alexander's age; that she knew of no facts showing or tending to show that the deed executed by Alexander to defendant was obtained by fraud, misrepresentation, undue influence, duress or coercion, other than that defendant was supposed to "do something for him and he didn't"; and that defendant "never came to see about him or nothing of the kind, and he wanted to take him to some lawyer after I brought him from the hospital. He called and wanted him to take him to the lawyer's and wanted some papers. He wasn't even able to walk around the house."

Plaintiff proffered in evidence certain portions of a deposition of defendant taken at the instance of plaintiff. Defendant objected, primarily upon the grounds that they were violative of the provisions of the Dead Man's Statute (Section 491.010 RSMo 1949, V.A.M.S.).[1] During the course of proffering the various portions of the deposition numerous specific objections, interspersed by lengthy colloquy between the court and counsel, were also made. Apparently, the court was of the opinion that inasmuch as it appeared that each of the

1.  All statutory references herein are to RSMo 1949, V.A.M.S.

parties had taken the deposition of the other, the provisions of § 491.010 may have been waived, but that none of the portions offered had any material bearing upon the issues and that all of them should be excluded. The portions proffered cannot be precisely determined. We, therefore, deem it advisable to set forth *all* portions of the deposition that can have any possible bearing upon the issues and hereinafter determine the propriety and effect of the ruling made by the court.

In his deposition, defendant had testified: He is 44 years of age, a nephew of Alexander, and had known and frequently visited him since childhood. He first met Magnolia in 1950. He never saw her again until 1957, the year Alexander died. He claims an interest in the property here in suit.

"Q. How come you have got such a claim, how did that come about? A. * * * In 1955 my uncle called for me to come in and see him, which my wife answered the phone, she passed the word on to me. I went down on a Sunday and saw him that afternoon, and he told me that he wanted to see me and show me a few papers that he had around the house, and after I looked at the papers he told me to take them home, look them over carefully and see what I thought about them.

"Q. What papers were these? A. A few papers like burial, insurance and a few old deeds which he had around there, and that is about all, so I took them back, asked him what did he want me to do about it. He says, well, he thought, the main thing he wanted me to have an interest in part of the property. * * * So after I asked him about this here half of the property, he said, well, he wanted me to have half, because I had a family, and I was trying to do the thing that was right, and I was a church worker, and he thought that I was entitled to half, and some day that I could get

off, get four hours, for he and I to go to the courthouse and get it straightened out, which we did, and I asked for four hours' leave. We went there one afternoon and went up to the Court House. The gentleman in there, the lawyer, he drawed up some papers, which I took my uncle along, and we all went up to the desk together, and he drew up the papers and asked my uncle was that so, that he wanted me to have half of the place, and he said yes, and he said, 'Well, you would have to sign for me, and it would have to be recorded,' and after that then he charged, I think it was seven dollars. * * * I don't recall his name."

The record also shows that defendant, at the instance of his counsel, took the witness stand to identify the deed delivered to him by Alexander. On cross-examination, counsel for plaintiff offered to prove that defendant paid no money to Alexander for the deed. That offer was denied.

In this court, plaintiff elaborates upon her contention as to proper construction to be placed upon the deed from Brauer to Alexander and Magnolia as follows: (1) that the deed from the straw man, Brauer, to Alexander and Magnolia "constituted a contract by which Alexander Johnson and Magnolia McClendon each acquired an estate for life, with the provision that the survivor of them would acquire the fee simple title to the real estate involved, and the trial court erred in depriving Magnolia of ownership of the whole estate and in holding that Herman Johnson owns an undivided one-half interest"; (2) that Alexander "could convey only that which he owned: As his interest during his lifetime was a life estate only, that was the extent of his conveyance to himself and Herman unless he, Alexander, outlived Magnolia, his daughter. Since he failed to outlive his daughter, the conveyance to Alexander and Herman did not affect the interest which Magnolia McClendon had theretofore acquired from Henry F. Brauer on August 10,

1949"; (3) that the interest acquired by Magnolia from Brauer was not extinguished by the deed of Alexander in conveying his rights to himself and Herman since neither Brauer nor Magnolia were parties to that transaction; and (4) that since the deed from Brauer to Alexander and Magnolia conveyed the real estate to Alexander and Magnolia, with right of survivorship, the court cannot disregard the clear intent of the parties.

In support of these contentions, plaintiff cites and relies solely upon our recent case of Hunter, etc., v. Hunter et al., 320 S.W. 2d 529, 530, 69 A.L.R.2d 1048. A careful reading of that case shows that plaintiff has overlooked the limitations specifically placed by this court upon the ruling there made.

The opinion in that case makes clear (1) that the court was called upon *to ascertain the true intent and meaning of a will,* wherein, the testatrix had devised the property there in question to the beneficiaries "as joint tenants with the right of survivorship"; and (2) that the provisions of the statutes relating to wills controlled disposition of the issues rather than the statutes relating to conveyances by *deed*. Moreover, the opinion specifically states: "If by the will in question the testatrix had devised to Della B. Hunter and Virginia Hunter the land in question as joint tenants and nothing more, then by force of the statute and by operation of law a joint estate in fee would have been created with the right of survivorship. In such cases, the right of survivorship, implied by operation of law, can be defeated and the joint tenancy severed by a conveyance of one of the joint tenants." It was further noted, however, that testatrix, who deemed herself dangerously ill, had sent an urgent note to her attorney, the scrivener, directing the preparation of the will and stating, "Farm—to mother * * * & Sister * * *—*survivor to get all*" (Emphasis supplied), and that the scrivener had attempted to so word the will. And, while it is true that the opinion does state, loc. cit. 534, "Our decision in this case is based solely on the language of the will itself," yet there appears the further statement, loc. cit. 535: "Sec. 474.480, supra, which, in substance, says that unless it appears that a devise was intended to convey an estate for life only and no further devise is made, then the devise shall be deemed to have conveyed a fee. The testatrix did indicate that it was her intention that her mother and her sister should have the land for life and the survivor should take the fee. It is our opinion that such is the proper interpretation of the will."

We, therefore, hold that Hunter v. Hunter, supra, is neither controlling nor in any manner decisive of the issue presented under the deeds here in evidence.

The following sections of the statutes are pertinent to the issues here presented. Section 442.450 provides: "Every interest in real estate granted or devised to two or more persons, other than executors and trustees and husband and wife, shall be a tenancy in common, unless expressly declared, in such grant or devise, to be in joint tenancy." Section 442.460 provides: "The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, *and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant.*" (Emphasis supplied.)

■ Looking now to the deed from Alexander and Magnolia's straw, Brauer, to Alexander and Magnolia "as joint tenants and not as tenants in common, with right of survivorship, * * * to have and to hold the same * * * as joint tenants, and not as tenants in common, with right of survivorship," we find a literal compliance with all of the restrictive provisions thrown around the creation of a joint tenancy under § 442.450. Note also that the habendum clause, by the use of legal terminology of well defined and long accepted meaning, removes all doubt as to the deed conveying title in joint tenancy in fee. That clause expressly declares that Alexan-

der and Magnolia are "to have and to hold * * * as joint tenants, and not as tenants in common, with right of survivorship, *and to their heirs and assigns forever.*" Although under the provisions of § 442.460 the term "heirs" or other words of inheritance are no longer required to create a fee simple title, yet, when so used, they, in positive and unmistakable terms, pass an estate of inheritance. As long since declared in Garrett v. Wiltse, 252 Mo. 699, 161 S.W. 694, 696:

> "But whilst the use of the word 'heirs' is not now essential in passing a fee to the named grantee, yet its use or that of the words 'and heirs' or 'heirs and assigns' is not to be allowed, under accepted rules of law, as in any wise making doubtful the intent of a grantor to pass a fee-simple title to the named grantee. [Cases cited.] Such words, unless controlled or modified by the context, but hark back to and connect themselves with the usages, the learning, and the rules of common-law conveyancing. They are highly technical and have a fixed meaning and when used in conveyancing, unless manifestly controlled by the context, as said, are held to be words of limitation and not words of purchase. 21 Cyc. 418. Words of limitation, in this technical sense, mean words 'which do not give the estate imported by them originally to the heirs * * * described, or to whom they are expressly directed, but only extend the ancestor's estate * * * to an estate of inheritance descendible to the heirs described. * * *'"

■ Construing the phrase "and to their heirs and assigns forever" as words of limitation and not of purchase, as we must construe them under the law above announced, it is crystal clear that Alexander and Magnolia took and held fee simple title to the real estate in question in a joint tenancy. In fact, the deed in question is in substance identical in terminology to the form suggested by McCune Gill, a widely recognized authority on Missouri conveyances, in his Treatise on Real Property Law in Missouri, 1949, Vol. I, p. 272, for the effective conveyance of a joint tenancy in fee. When such an estate is created, the right of survivorship inures by operation of law but that right is so qualified that (unlike tenancies by the entirety, peculiar to the estate of husband and wife) it is lost if the tenancy is severed by a conveyance of the interest of one of the joint tenants. In that event the former cotenant and the third person become tenants in common. Gibson v. Zimmerman, 12 Mo. 385 (reprint 250), 388; Frost v. Frost, 200 Mo. 474, 98 S.W. 527, 528; Gill on Missouri Titles, 3rd Ed., 1931, § 574, p. 292; 48 C.J.S. Joint Tenancy § 4, p. 927; 14 Am.Jur., Cotenancy, § 14, p. 86; Hunter v. Hunter, Mo., 320 S.W.2d 529, 533.

Consequently, under the provisions of § 442.025, enacted Laws 1953, p. 615, Alexander was empowered to convey his interest in the real estate (owned by him and Magnolia in joint tenancy) *directly* to himself and defendant Herman, "as joint tenants, and not as tenants in common * * * to have and to hold the same unto [themselves], and to the survivor of them, and to the heirs and assigns of such survivor forever." In so doing, he severed his interest in the joint tenancy theretofore vested in him and Magnolia and vested in himself and defendant Herman, as joint tenants, and not as tenants in common, with right of survivorship, title to an undivided one-half interest in fee to the real estate. It follows, therefore, that upon Alexander's death, there being no prior severance of the joint tenancy existing between him and defendant Herman, the latter took title in fee to an undivided one-half interest in the whole of the real estate as a tenant in common with Magnolia, each owning an undivided one half as tenants in common.

Plaintiff contends further, however, that the deed from Alexander is "void for the reason that it was intended to serve as testamentary disposition of the interest in the real estate held by Alexander * * * and

does not have two witnesses, an attestation clause or the other formalities of a will." She argues that the deed to Herman actually gave Herman nothing until the death of Alexander; that Alexander and Magnolia lived on the premises, while Herman did not; that since Magnolia is entitled to half of the property, Herman could not come into possession of the other half until Alexander's death; and that the "admissions" in Herman's deposition show he was entitled to only half of the property, which he could not get.

Suffice to say that we have read the record carefully and have set forth all alleged "admissions" made by Herman in his deposition and have not found a scintilla of evidence that the conveyance to Herman was not intended to or did not in fact vest the title therein conveyed to Herman *in praesenti.*

■ Insofar as the record shows, the deed, when executed, was unconditionally delivered and promptly recorded. The law is thus stated in Galloway v. Galloway, Mo., 169 S.W.2d 883, 888: " 'Delivery' signifies that all dominion and control over the deed is passed from the grantor to the grantee, or to some one for him, with the intention of transferring the present ownership of land, or an interest or estate therein. Hein et al. v. Payne, 346 Mo. 967, 144 S.W.2d 122; Blackiston v. Russell, supra; Dallas v. McNutt, 297 Mo. 535, 249 S.W. 35; Standiford v. Standiford, supra. The fact that the enjoyment of the estate is postponed until the grantor's death does not make an instrument, otherwise a deed, testamentary in nature, if the instrument is delivered in the lifetime of the grantor; for, if so delivered, a present estate is transferred." The contention must be denied.

■ Plaintiff next complains that the court erred in excluding "admissions of the defendant against his interest and in limiting the cross-examination of the defendant about matters pertaining to the execution of the deed." What we have heretofore said of the alleged "admissions against interest"

largely disposes of this contention adversely to plaintiff. When every statement made by defendant, either in his deposition or as was proffered upon cross-examination at the trial, is viewed in the light most favorable to plaintiff, it nevertheless shows nothing to support the contention here made. Hence, the error, if any, in excluding any evidence proffered by plaintiff was obviously immaterial and could not possibly affect the decision of the trial court or of this court on appeal.

■ Plaintiff's final contention is that the trial court erred in denying her motion to reopen her case for further testimony following the close of all of the evidence, "but before final submission." The record shows that the trial began and was concluded on April 15, 1958. The next entry shown is the filing of the aforesaid motion on June 6, 1958. It is unverified, and alleges the discovery of additional evidence, to wit: Exhibit "AA", which is as follows:

> "St. Louis, Mo.
> "July 3rd 1956
>
> "To Herman Johnson
>
> "It is understood that until I pay up the deed of trust of $1,050.00 on 4256 W. Cook you are to have my interest as security until the above amount is paid. In the event that I fail to pay, my interest is your security.
>
> "/s/ Alexander Johnson"

The motion then recites that such evidence was in the possession of defendant; that further evidence will reveal that at no time since the execution of the deed by Alexander to defendant has there been a deed of trust on the property and that defendant was not a creditor of Alexander at the time of the latter's death; that the exhibit "shows on its face that the defendant Herman Johnson is not entitled to any interest in the property * * * and that the said evidence is material to the issues of this case." Thereafter, on June 10, 1958, defendant filed a motion to strike the mo-

tion to reopen. Defendant's motion to strike was sustained.

█ It is to be noted that the exhibit set forth in the motion is dated July 3, 1956, one year and three months after the execution, delivery and recording of the deed by which the joint tenancy in Alexander and defendant was created. There is no showing in the motion or in the record as to how or in what manner this exhibit could have affected the decision rendered by the court and, of course, the conclusions stated in the motion do not prove themselves. The trial court is vested with a broad discretion in matters of this nature. Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616, 626 [13–15]. There being no showing that it did abuse its discretion in overruling the motion, the contention is denied.

The judgment is affirmed and the cause remanded for partition of the real estate and for an accounting of rents and profits as set forth in a stipulation of the parties shown at page 58–a of the transcript.

All concur.