(3 Misc. Rep. 43.)

### MILLER v. GILBERT et al.

(City Court of Brooklyn, General Term. March 7, 1893.)

1. WILLS—CONSTRUCTION—VESTED REMAINDER.
    A holographic will devised all of testator's land to his widow, during widowhood, and on her death the land was directed to be sold, with the moneys arising therefrom to be equally divided among testator's four children, " or their heirs. " In case of the widow's remarriage, the land was directed to be sold, and one half the money was to be used for her benefit and support, to " revert back " to the children on her death, and the other half to be divided equally among them. *Held*, that the phrase " revert back " clearly indicated testator's intention to vest the fee in the children, subject to the widow's life estate; and therefore a conveyance by one of them of his interest during the widow's lifetime was valid and binding.

2. SAME.
    The words " or their heirs, " in the will directing the proceeds of sale to be equally divided. after the widow's death, among testator's four children, " or their heirs, " refer to the contingency of the death of one or more of the children during testator's lifetime, and not during the lifetime of the widow, and hence do not postpone the vesting of the estate until the widow's death.

3. SAME—EQUITABLE CONVERSION.
    The direction for the sale of the land on the death or remarriage of the widow is merely a provision for the equal and convenient division of the property among the children, and does not work an equitable conversion of the land into money, to take effect as a gift of personal property on the widow's remarriage or death.

Exceptions from trial term.

Action for partition by Barbara Miller against Frederick P. Gilbert and others. The findings of the special term were in plaintiff's favor, and defendants' exceptions and motion for a new trial were ordered to

be heard at the general term in the first instance.    Exceptions over-ruled, and new trial denied.

Argued before CLEMENT, C. J., and OSBORNE, J.

Theo. Burgmyer, for plaintiff.

Hugh A..McTernan and Edgar Whitlock, for defendants.

OSBORNE, J.    One Raphael Gilbert died June 6, 1863, leaving a holographic will, dated March 16, 1852, which was duly admitted to probate August 3, 1863.    Said will is, in part, as follows:

" This, my last will and testament.  Be it known by these premises, to all whom it may concern, that I, Raphael Gilbert, of the city of Brooklyn, in the state of New York, and of the United States of America, do give to my wife, Maria, on the day of my death, a free and uncontrollable use and occupancy of my houses and lots situated No. 121 Prospect street, 151 York street, and 335 Bridge street, as long as she shall continue my widow; but if she shall cease to be my widow by death, then the aforesaid houses and lots shall be sold, and the moneys arising therefrom shall be equally divided among my children, viz. Philo Baker Gilbert, Wesley Carlo Gilbert, Henry Still Gilbert, Wilbur Fisk Gilbert, or their heirs; but if she shall cease to be my widow by marriage, then the aforesaid houses and lots shall be sold, and one half of the moneys arising therefrom shall be hers, to be used for her benefit and comfort as long as she shall live, and then it shall re-vert back to my children, and be equally divided among them; and the other one half of the moneys arising from the sale of the aforesaid houses and lots shall be equally divided among my children as aforesaid. "

Testator also made a similar disposition of his furniture and other household chattels for the benefit of his widow and children, providing, however, for a division thereof in kind, instead of directing a sale thereof.    Then follows a legacy of $10 to each of his children, adding as follows:

" I have given to each of my children $100, more or less, except Wilbur, which sum shall be paid to him to make him equal with the others. "

No executors were named in or appointed by said will.

The testator left, him surviving, his widow and said four sons as his only heirs at law.    The widow, Maria, died January 31, 1891, never having remarried.    In 1868, Philo B. Gilbert was adjudged a bankrupt, and all his property was conveyed to his assignee, and subsequently, by virtue of sundry mesne conveyances, became vested in the defendant Carrie G. McClellan.    The said Philo B. Gilbert predeceased his mother, leaving children, his heirs at law, him surviving.    On April 18, 1879, the said Wilbur F. Gilbert, with his wife, conveyed all his right, title, and interest and share in the said premises to one George F. Miller, and subsequently, by virtue of sundry mesne conveyances, the same became vested in the plaintiff.    The said Wilbur F. Gilbert also predeceased his mother, leaving children, his heirs at law, him surviving.    Wesley C. Gilbert survived his mother, and died May 26, 1891, and under his will his interest in said real estate has been conveyed to his brother, the de-fendant Henry S. Gilbert, whose ownership of a one-half interest in said premises is not here disputed.

This action was commenced for a partition of said premises.    The learned trial judge has found, inter alia, as conclusions of law, that, under said will and by the laws of this state, said four children of the

testator, on his death, became seised of a vested remainder in fee in said premises, subject only to the life estate of testator's widow; also that the provision for the sale of said premises at the death of testator's widow was not an equitable conversion into money, and a gift of personal property at her death, but only a direction and authority for the convenience of division, and solely for that purpose. An interlocutory judgment has been entered in accordance with said findings and conclusions. The appellants the children of Wilbur F. and of Philo B. Gilbert have filed exceptions to said conclusions, and seek to obtain a new trial on said exceptions. Their contention is that, under the will, there was no devise of the lands, but only of the proceeds of sale thereof, which were to be divided among the testator's children at, and not until, the death of the widow; that there was an equitable conversion of the realty into personalty on her death; that nothing passed under the deed of Wilbur F. Gilbert and under the bankruptcy proceedings against Philo B. Gilbert; and that, as they both predeceased their mother, the testator's widow, their children are now entitled, on her decease, to take the shares of their respective fathers. It is a fundamental principle in the construction of wills that the intent of the testator is to be determined from the instrument taken as a whole, rather than from isolated or particular phrases; and this rule applies with greater force where, as in the present case, the will was drawn by the testator himself, and the form thereof, and the language and expressions used, clearly indicate that the draughtsman was unskilled in matters of that character. Lytle v. Beverlidge, 58 N. Y. 592. Applying this rule to the will before us, we are of the opinion that the testator intended to give all his property to his four sons, to be equally divided between them, subject only to the life estate of the widow in the whole thereof, provided she did not remarry; but, in case she remarried, then she was only to have a life estate in one half of the realty, and the other half was to "revert back to my children," as the testator puts it. We think that a fair and reasonable interpretation of the words "revert back" indicates that the testator assumed and believed that by the preceding language he had already vested his real estate in his children in equal shares, subject to the use thereof of his widow during her life or widowhood. His disposition of his personal estate, furniture, etc., is in the same direction, as well as the legacy of $100 to his son Wilbur, "to make him equal with the others." Nowhere in the will is there the slightest indication on the part of the testator of an intent to create a trust during the life of his widow, or to tie up his property till her death. On the contrary, in the closing clause of his will he directs that, if it should be necessary to sell any part of his realty to pay mortgages or debts, "let it be sold, and the remainder of my property shall be disposed of as aforesaid." Here, again, the use of the words "disposed of" would seem to indicate that the testator assumed that he had effectually devised and bequeathed all his property, and not that he had established a trust during the life or widowhood of his widow, with a gift of the proceeds of the sale thereof on her death. Nor can we see that the use of the words, "or their heirs," following the names of the testator's children, works in support of the appellants' con-

tention.   Bearing in mind that the testator was unskilled in the use of legal phraseology, those words were, we think, intended to be used to vest his realty absolutely in his children; but, even if they should be construed to be words of substitution, then, on well-settled rules, they should be construed as referring to the contingency of the death of one or more of testator's children during his lifetime.   As all of testator's children survived him, the words of substitution (if they were such) would be inoperative.   The direction given by the testator that on the death or remarriage of his widow his real estate should be sold, was merely a provision for the equal and convenient division of his property. It consisted of three houses and lots incapable of equal partition among his four sons, and the direction for a sale was the simple and natural method of arriving at what each son should be entitled to out of his property.   Ample authority for the construction that we have given to the testator's will is to be found in the cases of Snell v. Tuttle, 44 Hun, 324; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. Rep. 388; In re Tienken, 60 Hun, 418, 15 N. Y. Supp. 470, affirmed 131 N. Y. 391, 30 N. E. Rep. 109.   The will construed in the last-cited case contains substantially the same provision as the will in question with reference to the sale of real estate held in trust for testator's wife, and the division of the proceeds among testator's children on her death, and the court there held that testator's children on his death took vested interests in such real estate, subject to the life estate of the testator's widow.   We think that the exceptions should be overruled, and the motion for a new trial denied, with costs.