# FIRST AND AMERICAN NATIONAL BANK OF DULUTH AND OTHERS v. RAYMOND W. HIGGINS AND OTHERS.
## STATE, INTERVENER.
## RACHEL CONAN CHARNEY AND OTHERS, APPELLANTS.[1]

August 16, 1940.

No. 32,318.

[1]Reported in 293 N. W. 585.

*Fryberger, Fulton & Boyle,* for plaintiff-appellants.

*J. A. A. Burnquist,* Attorney General, and *George W. Markham,* Assistant Attorney General, for intervener-appellant.

*Sydney C. Charney,* for appellant Rachel Conan Charney.

*John P. Devaney* and *Harry E. Ryan,* for appellants Betty Jane Charney and Joseph Conan Charney.

*Gillette, Nye, Harries & Montague,* for respondent-trustees.

*Warner E. Whipple* and *George W. Atmore,* for respondents Raymond G. Conan and Alma Conan.

PETERSON, JUSTICE.

This action was brought to obtain a construction of two trusts created by William J. Conan. The one is referred to as the "living trust." It was created under a trust agreement dated March 1, 1926. The other is referred to as the "testamentary trust." It was created under his last will dated August

14, 1926. Mr. Conan died on November 27, 1926. He named as one of the beneficiaries under both trusts his brother Joseph D. Conan, who died testate on August 27, 1937, and by his will made provisions disposing of the shares of the William J. Conan trusts of which he was the beneficiary. The question in this case is whether or not Joseph D. Conan had an interest in the William J. Conan trusts which he could dispose of by his will. The plaintiffs are the executors and certain beneficiaries of a trust created under the will of Joseph D. Conan. The defendants are the trustees of the William J. Conan trusts and one of the beneficiaries of the trust created under the Joseph D. Conan will and the beneficiary's wife.

By the terms of the trust agreement creating the living trust the settlor made an *inter vivos* transfer to the trustees of stocks and bonds carried by the trustees at a book value in excess of $2,000,000. The trust contained no real estate. The personalty transferred was to be held upon irrevocable trust, among other things, to hold, administer, invest, reinvest, disburse, and apply the assets, principal, and interest, as directed; to pay the net income to the beneficiaries named semiannually on or before March 1 and September 1 in each year; and on March 1, 1941, to terminate the trust and distribute the corpus and any accumulated income.

The principal and income were to be distributed and paid under a direction which reads as follows:

"That the net income from the Trust Estate and the principal or corpus of the Trust Estate shall at the times hereinbefore mentioned be paid to or divided among or distributed to the following named persons, described herein as beneficiaries, in the following proportions or fractional amounts, and to their heirs at law by right of representation, in accordance with the then laws of descent of the State of Minnesota, to-wit: To Joseph D. Conan, residing at Duluth, Minnesota, one seventh (1/7) thereof:".

The other beneficiaries and the shares which they were to take were listed following the name of Joseph D. Conan.

By the terms of the will under which the testamentary trust was created provisions were made for payment of the testator's debts, certain legacies, and the appointment of the trustees of the living trust as executors under the will and trustees of the testamentary trust. The entire residue of the estate, which consisted of both real and personal property, was devised and bequeathed to the trustees in trust.

The land consisted of three tracts. One was in the business portion of Duluth. Counsel informed us that it was anticipated at the time the will was made that this tract would greatly appreciate in value. The two other tracts were iron mining properties which were subject to leases on a royalty basis expiring on August 1, 1949. The will provided that the trustees should not, except by unanimous consent of all the then beneficiaries under the will, sell the Duluth tract for a period of 20 years nor the mining properties before the date of the expiration of the leases. At the end of such periods the trustees were directed to sell or divide and distribute said lands to the beneficiaries named in the proportions described in the will.

The corpus was declared not to be liable for the debts or obligations of any beneficiary prior to the distribution thereof.

The testator provided in an *in terrorem* clause that if any of the beneficiaries should contest the will or the distribution of the estate thereunder "I annul my bequest herein made to such beneficiary, and it is my will that such beneficiary shall be absolutely barred and cut off from any share in my estate."

All legacies which were not accepted or which lapsed were to pass to and become part of the residue.

All inheritance, legacy, succession, and similar taxes payable in respect to any property or interest passing under the will were to be paid out of the corpus of the trust estate.

Notwithstanding other provisions, the trusts were not to continue for a period longer than the lives of the persons

named as beneficiaries and for 21 years thereafter, "and in the event of the failure or termination of the trust the Trust Estate shall thereupon vest in the beneficiaries herein named in the proportions or fractional amounts as herein designated."

During the continuance of the trust the trustees were to collect and at the end of each year distribute to the beneficiaries named in the proportions described in the will the income, rents, royalties, and profits, less a reasonable reserve and expenses. The trustees were directed to distribute at the end of each year to the persons named as beneficiaries ten per cent of the corpus or principal of the trust estate so that at the end of ten years from its commencement all of the corpus or principal, except the real estate, should be distributed to the beneficiaries in the proportions stated in the will.

The will contained a clause reading as follows:

"That the income, rents, royalties and profits from the Trust Estate and the principal or corpus of the Trust Estate shall be paid to, or divided among or distributed to the following named persons, described herein as beneficiaries, in the following proportions or fractional amounts, and to their heirs at law by right of representation, to-wit:

"To Joseph D. Conan, my brother, residing at Duluth, Minnesota one-fifth (1/5) thereof;".

Following Joseph D. Conan's name were the names of the other beneficiaries and the shares specified for them.

William J. Conan's will was admitted to probate and his estate probated. Joseph D. Conan was one of the executors and a trustee under both trusts. Inheritance taxes were paid as directed. The inheritance of Joseph D. Conan was determined to be in excess of $300,000, on which an inheritance tax of over $42,000 was paid. A tax in excess of $20,000 was paid on his gift under the living trust as a transfer made in contemplation of death. The estate and gift taxes were com-

puted and paid upon the basis that the beneficiaries took fee interests in the shares of which they were beneficiaries.

Joseph D. Conan's will was admitted to probate. He created certain testamentary trusts under the will. The present controversy arises out of the claims by his executors and certain of the beneficiaries under the trusts that the beneficial interests given to Joseph D. Conan under the William J. Conan trusts—one-seventh of the corpus and income under the living trust and one-fifth thereof under the testamentary—became part of Joseph D. Conan's estate, which passed under his will. Certain of his beneficiaries and the surviving trustees of the William J. Conan trusts opposed the claims made on behalf of the Joseph D. Conan estate, asserting that he took only a life estate in the beneficial interests under the William J. Conan trusts. This proceeding was commenced to have a judicial declaration of the rights of the parties.

The state intervened for the purpose of asserting claims to inheritance taxes upon the interests passing under the Joseph D. Conan will. It adopted the claims of the plaintiffs that Joseph D. Conan took fee interests under his brother's will which he could dispose of by his own will.

Throughout, both below and here, the parties have assumed, and the beneficiary respondents state in their brief, that the two trusts are so related in time, purpose, and intention that the same rules of construction are applicable to both.

The issue tried below was whether Joseph D. Conan took a fee or a life interest in the beneficial interests for his benefit under the William J. Conan trusts.

Much of the contest concerned the effect of the language giving the shares to the named beneficiaries with the clause following in the living trust "and to their heirs at law by right of representation, in accordance with the then laws of descent of the State of Minnesota," and in the testamentary trust with the clause "and to their heirs at law by right of representation." Plaintiffs claimed that the language clearly manifested an intention to give Joseph D. Conan and the other

named beneficiaries the beneficial interests in fee. Defendants contend that the language is not appropriate to create fee interests and that it shows an intention to create either life estates in the named beneficiaries with remainder over to their heirs at law, or substitutionary gifts to the heirs at law upon the death of the named beneficiaries.

Further, defendants contend that the beneficiaries did not take vested interests in the shares of which they were beneficiaries. It is contended first that a beneficiary is incapable of taking a vested interest under a trust in virtue of 2 Mason Minn. St. 1927, § 8095, which provides that an express trust "shall vest the whole estate in the trustee, in law and in equity, subject only to the execution of the trust; and the person for whose benefit the trust was created shall take no estate or interest in the lands but may enforce the performance of the trust in equity."

Secondly, it is urged that there was no gift by the donor and testator to Joseph D. Conan and that he took benefits only under the directions to the trustees to divide and pay over or distribute shares of the income and corpus at specified times with the consequence that vesting was postponed and occurred only as payments and distributions were made. Plaintiffs contend that the statute does not prohibit the vesting of a beneficial interest, although it does prevent the beneficiary from taking any legal or equitable estate or interest in the lands, and that the trust instruments construed as a whole show definite intention to create vested interests in the beneficiaries.

Defendants also contend that the interest of a beneficiary of a trust cannot be devised or bequeathed.

Defendants also maintain that the claims of plaintiffs were determined adversely to them in certain accounting proceedings brought by the trustees. Also, they urge that there was a practical construction of the trusts by the parties contrary to the claims now made by plaintiffs. The facts with respect to the claimed *res judicata* and practical construction will be stated more fully in connection with the discussion of the

legal questions raised by these claims. The court below failed to find on either of these questions.

The decision below was that Joseph D. Conan took only a life interest under the William J. Conan trusts and that the shares of the William J. Conan trusts of which he was beneficiary did not pass by his will. The same questions are raised here as below.

■ In construing the instruments creating the trusts the object is to ascertain the intention of the donor and testator. His intention is to be ascertained from the language of the instruments, which may have a meaning controlled by context and surrounding circumstances. Where tokens of meaning manifesting an intention other than that which the language itself imports are absent, the intention must be found exclusively in the language. In re Trust under Will of Holden, 207 Minn. 211, 218, 291 N. W. 104.

Words of inheritance are not necessary to pass an absolute interest in personalty. Tyson v. Blake, 22 N. Y. 558. The trust agreement and will would have passed an absolute interest in the personalty without such words.

The rule for the construction of the devise of the lands in trust to determine whether fee or life interests were given to the beneficiaries is prescribed by 2 Mason Minn. St. 1927, § 8748, which provides that "every devise of land shall convey all the estate of the testator therein, unless it appears by the will that he intended to convey a less estate." The common-law rule was that a devise did not pass a fee unless there were words of inheritance or other expressions of such intention. Absent such language, only a life estate passed. In re Estate of Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. R. 48; In re Estate of Evans, 145 Minn. 252, 177 N. W. 126, 8 A. L. R. 1631. The effect of the statute is to reverse the common-law rule by providing that a fee shall pass without words of inheritance or equivalent expressions of intention. 1 Tiffany, Real Property (3 ed.) §§ 30 and 38. In this respect the rules relating to real property were made to conform by statute

to those concerning personalty. The language was sufficient without the superadded words of inheritance to pass an absolute interest to the named beneficiaries.

Where an absolute interest passes without words of inheritance, a life or some lesser estate can be created only by language restraining and qualifying the grant or devise to the interest intended. Or, as it is sometimes said, language that passes a fee must be cut down to create the lesser interest. Brown v. Lewis, 197 N. C. 704, 150 S. E. 328 (realty); 69 C. J. p. 465, § 1530 (personalty).

"Under the modern statutes dispensing with words of inheritance in creating an estate in fee, and providing that a conveyance or devise shall, unless a contrary intent appear, transfer the estate which the grantor or testator has, an estate for life will not be created unless this is plainly expressed or clearly to be inferred, or unless the grantor owns a life estate merely." 1 Tiffany, Real Property (3 ed.) § 50.

Unless the superadded words of inheritance operate to cut down the language under which fee interests would otherwise have passed, the named beneficiaries took fee interests.

A bequest or devise of an absolute interest can be cut down to a lesser interest by subsequent language only when the latter is as clear, plain, and unequivocal as the language showing the passing of a fee. Gahan v. Golden, 330 Ill. 624, 162 N. E. 164; Estill v. Ballew (Mo.) 26 S. W. (2d) 778, 70 A. L. R. 321; Cryan's Estate, 301 Pa. 386, 152 A. 675, 71 A. L. R. 1417.

The words of inheritance in the instant case do not show an intention to cut down the fee to some lesser estate. Such language is expressive of an intention to pass a fee. The insertion of the word "to" before the words "their heirs," etc. is of no particular significance. Meacham v. Blaess, 141 Mich. 258, 104 N. W. 579; Poston v. Midland Timber Co. 76 S. C. 36, 56 S. E. 546. Nor do the words "at law" following the word "heirs" change the meaning. Heirs at law, lawful heirs, legal heirs, and similar expressions are generally regarded as

synonymous. Wool v. Fleetwood, 136 N. C. 460, 48 S. E. 785, 67 L. R. A. 444; Wallace v. Hodges, 160 Ala. 276, 49 So. 312; Eaton v. Tillinghast, 4 R. I. 276; In re Ruppert's Will, 233 Wis. 527, 290 N. W. 122.

The words "at law by right of representation, in accordance with the then laws of descent of the State of Minnesota" in the living trust and "by right of representation" in the testamentary trust which follow the words "and to their heirs" are not inconsistent with the passing of a fee and do not indicate an intention to pass a life estate of some kind. In Van Every v. McKay, 331 Mo. 355, 357, 53 S. W. (2d) 873, 874, the court construed a will in which the testator gave his wife a life estate in certain land with power of disposal, which she did not exercise, with the further provision "and at her death all of my estate * * * shall descend to my daughter and son and their heirs, viz., Barbara J. J. Hafford, Robert B. A. McKay according to the laws of Missouri, concerning descents and distributions." The question was whether the son took a fee or life estate in the remainder with remainder over to his heirs. In a well reasoned opinion the court pointed out that while words of inheritance were not necessary to pass a fee to the son the words of inheritance did not operate to cut down the fee devised, and said [331 Mo. 360]: "They [the words of inheritance] are words of limitation and not of purchase, and technically they extend the son's estate to an estate of inheritance descendible to his heirs." The court held that the words of inheritance indicated an intention to devise a fee rather than a life estate and quoted from Garrett v. Wiltse, 252 Mo. 699, 708, 161 S. W. 694: "They [the words of inheritance] point the other way. The word 'heirs' connects itself logically with the concept of inheritance, * * *." The words were held not to limit the son's interest to a life estate or carve out a remainder after his death for his heirs. The cited case is almost identical in its facts with the living trust here. In the case of In re Tamargo, 220 N. Y. 225, 227, 115 N. E. 462, 463, there was a devise and bequest to four named persons, "their heirs and

assigns, * * * share and share alike, per stripes and not per capita." The court held that there was a definite disposition of a fee interest to the four named persons in the first instance, which the subsequent language did not make less absolute. The limitation here did not include assigns, but that is a matter of minor importance. In Fidelity Union Trust Co. v. Farley, 127 N. J. Eq. 346, 13 A. (2d) 313, 315, a gift of a remainder to named persons, "their heirs and assigns, share and share alike, per stirpes and not per capita," was held to be an absolute gift to the named persons.

A limitation to a named person and an unusual class of heirs such as would not at common law create a fee simple conditional, a fee tail, or some similar form of fee creates a fee simple. Restatement, Property, § 27, comment f. A few illustrations will suffice. In Ladd v. Whitney, 117 Mass. 201, a devise to one "to have and to hold the same to him and his heirs and assigns, and all the grandchildren severally equal shares with the heirs" was held to create a fee simple, the court saying: "There is nothing in the subsequent words to indicate a purpose to cut down his [the devisee's] interest to a life estate." In Johnson v. Whiton, 159 Mass. 424, 425, 34 N. E. 542, a devise to testator's granddaughter "and her heirs on her father's side" was held (Holmes, J.) to create a fee simple. In Georgia, C. & N. Ry. Co. v. Archer, 87 Ga. 237, 238, 13 S. E. 636, a devise to two nephews "and their heirs forever" to which was superadded: "It is my will and desire that the said [devisees] shall enjoy and own my said home-place equally and jointly and at their death to go to their heirs," gave the nephews a fee. In State Bank v. Thiessen, 137 Neb. 426, 289 N. W. 791, the devisee was held to take a fee under a devise to him "and his heirs forever" without any power or right to sell, mortgage, or otherwise encumber the land devised. In Johnson v. Coler, 187 Iowa, 734, 174 N. W. 654, the addition of the word "living" to heirs was held not to change the meaning of the word so as to make the heirs takers by purchase rather than by limitation. In Luitjens v. Larson, 222 Iowa, 1320, 271 N. W.

239, 240, the testator's widow was held to take a fee under a devise to her "during all the term of her natural life in fee simple." The words "during all the term of her natural life" were rejected as not cutting down the fee to a life estate. A grant to one "during her life, grantee, and to her heirs and assigns, forever" by deed which contained a *habendum* to the grantee "and her heirs and assigns, in fee simple, forever," was held to create a fee simple in the grantee. Meacham v. Blaess, 141 Mich. 258, 259, 104 N. W. 579, 580, *supra*. A deed granting land to the grantee, "her lifetime, and at her decease to her lawful heirs * * * heirs and assigns forever," was held to create a fee simple in Poston v. Midland Timber Co. 76 S. C. 36, 38, 56 S. E. 546.

That much of the trust estates consisted of personalty does not prevent the operation of the rule that the use of words of inheritance indicates an intention to pass an absolute interest. An absolute interest in personalty will pass under a will by language which would pass a fee of realty in a similar case notwithstanding the superaddition of unnecessary words of inheritance. State Street Trust Co. v. Morris, 218 Mass. 429, 105 N. E. 992; Wintermute v. Snyder, 3 N. J. Eq. 489, 494; Worrell v. Vinson, 50 N. C. 91; In re Walton's Estate, 8 D. M. & G. 173, 57 Eng. Ch. 135, 44 Reprint, 356. Where the testator disposes of both real and personal property by the same language, the language has the same meaning for both kinds of property. Hempstead v. Hempstead, 285 Ill. 448, 120 N. E. 782. In In re Tamargo, 220 N. Y. 225, 115 N. E. 462, the will disposed of a residue consisting of both real and personal property. The language was applied to personalty with the same meaning as to realty. In Holmes v. Alexander, 82 N. H. 380, 134 A. 536, the words "and their heirs" were held to be unnecessary to pass an absolute gift of personalty and surplusage.

Defendants argue that the word "and" before the words "to their heirs," etc. should be read as "or" and that we should hold that there were substitutional gifts in the alternative to

the heirs in the event of the death of the named beneficiaries. The word "and" may be read as "or" where that was the testator's intention. There must be some expression in the will which makes it clear that the meaning and intention of the testator requires the transposition. Otherwise the court would supply a meaning for that expressed by the testator. In re Tamargo, 220 N. Y. 225, 231. There is no expression of intention here other than that which is to be found in the words themselves. Hence there can be no justification for substituting the word "or" for the word "and."

If we made the transposition it would not help defendants. Whether the substitutionary gifts, devises, and bequests would ever become effective depends on the time of vesting. We shall treat, as we shall hold *infra,* the beneficial interests as having vested immediately in the named beneficiaries as of the time when the trusts became effective, which in the case of the living trust was at the time the trust agreement was executed and the testamentary trust was at the testator's death. A gift, devise, or bequest to a named person as the primary taker and to others as substitute takers in the event of the primary taker's death contemplates, in the absence of specification to the contrary, as here, that the primary taker's death shall occur during the donor's or testator's lifetime. The gift, devise, or bequest to the substitutes is in effect contingent upon the failure of the primary taker to survive the donor or testator. Where the primary taker survives the donor or testator, the gift, devise, or bequest vests in him, and he takes to the exclusion of the substitutes. The words of substitution become inoperative by the vesting of the gift, devise, or bequest in the primary taker. Taylor v. Taylor, 118 Iowa, 407, 92 N. W. 71; In re Will of Evans, 234 N. Y. 42, 136 N. E. 233; Miller v. Gilbert, 3 Misc. 43, 22 N. Y. S. 355; Brokaw v. Hudson's Executors, 27 N. J. Eq. 135; 69 C. J. pp. 353-357, §§ 1361-1368; Restatement, Property, § 37, comment *l.* Since Joseph D. Conan was alive when the living trust was created and survived William J. Conan, the beneficial interests vested in Joseph to the

exclusion of his heirs, and they do not take in virtue of any claimed right as substitute takers.

The claim is also made that the heirs take as purchasers in virtue of 2 Mason Minn. St. 1927, § 8058, abolishing the rule in Shelley's Case. By its terms the statute applies only "when a remainder is limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises is given." Neither the rule nor the statute abolishing it applies where, as here, a life estate is not given to the first taker and a remainder over is not limited to his heirs. In re Trust under Will of Holden, 207 Minn. 211, 291 N. W. 104; Sagers v. Sagers, 158 Iowa, 729, 138 N. W. 911, 43 L. R. A. (N. S.) 562.

Finally, it is contended that the superadded words of inheritance must be construed as restraining the interest of the named beneficiaries to life estates with limitation of the remainder over to their heirs in order to give the language meaning and effect. There is nothing betokening an intention to give life estates to the named beneficiaries with remainders over to their heirs. The only meaning apparent from the language is an intention to give absolute or fee interests. In re Estate of Denari, 165 Misc. 450, 300 N. Y. S. 1279.

No claim is made that the heirs took concurrent interests with the named beneficiaries.

Defendants urge that since words of inheritance are unnecessary under the statute the effect of using such words is to give the shares of a named beneficiary to his heirs at the expiration of the estate of the named beneficiary and to constitute the heirs takers by purchase. The words "to his heirs" in grant or devise to a named person and his heirs are words of limitation describing the extent of the interest taken by the grantee or devisee and not words of purchase describing the persons who are to take upon his death. The heirs do not take in virtue of such words. There is much to be said on the side of defendants that the words are rendered meaningless by holding them to be words of limitation. Some courts have adopted this view and criticized the continued use of such words

as unnecessary and meaningless. In re Wells, 113 N. Y. 396, 21 N. E. 137, 10 A. S. R. 457; In re Estate of Knapp, 168 Misc. 487, 6 N. Y. S. (2d) 100. Others have held the use of such words to be praiseworthy and lawyerlike expressions of intention according to the usages, learning, and rules of common-law conveyancing. Garrett v. Wiltse, 252 Mo. 699, 161 S. W. 694. In either view the words do not cast doubt on the intention to pass a fee or absolute title. In re Estate of Denari, 165 Misc. 450, 300 N. Y. S. 1279; Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162, 67 L. R. A. 97, 105 A. S. R. 471.

The words "and his heirs" and equivalent expressions in a conveyance or devise to a named person and his heirs have a well settled meaning if any words do. The history of the meaning of the words is traced by Pollock and Maitland in an illuminating discussion of their use and meaning in connection with gifts under the early law. They state that, while such words prior to the twelfth century passed a concurrent interest to the heirs which was protected by the then rules against disherison, the words came to have a well settled meaning by the last part of that century as being words of limitation descriptive of the estate given and not as words of purchase describing those who were to take from the donor. At common law a man had one heir, the oldest male, and hence the plural simply meant that the donee's estate should endure so long as he had living heirs one after another. If the heir got the land at the donee's death he got it by inheritance from the donee and not as a donee of the donor to take effect after the estate of the named donee. 2 Pollock and Maitland, History of English Law (2 ed.) pp. 13-19, 307-313. So well settled was the meaning of these words when Bracton wrote (1250-1258) that the authors said of their meaning at that time: "An heir is one who claims by descent what has been left undisposed of by his ancestor; what his ancestor has alienated he cannot claim. Others may think differently, may hold that the issue are enfeoffed along with their ancestor; but this, says Bracton, is false doctrine."

This view still prevails—the words "and his heirs" in a grant or devise to one and his heirs are words of limitation.

The argument that because the statute has made the use of words of inheritance unnecessary it has changed their meaning is not valid. The statute is permissive so far as dispensing with their use. But it has not changed their meaning, and where the words are used they will be taken in their well understood meaning. Van Beuren v. Dash, 30 N. Y. 393. We would not be justified in holding that such words have a changed meaning since the enactment of the statute in view of other statutes *in pari materia.* Their inveterate use as words of limitation has given them such meaning that the legislature for want perhaps of better language has adopted their use in declaring its own meaning by providing that the short forms of conveyance without words of inheritance or express covenants under 2 Mason Minn. St. 1927, § 8204, should be the same as if there was a grant and the usual covenants "to the grantee, his heirs and assigns" and in approving and recommending for use forms of deeds and mortgages containing such language as standard forms under 3 Mason Minn. St. 1940 Supp. §§ 8204-1 to 8204-9, and appendix No. 1. While the use of such words may be dispensed with, they may still be used with their well established meaning.

The appropriate language to create a life estate is by limitation to the life tenant for life or during his lifetime with a provision that at the death of the life tenant the remainder shall go to his heirs, or equivalent expressions. 1 Tiffany, Real Property (3 ed.) §§ 50 and 53. The language here lacks provision for either a life estate or a remainder over. The utter impossibility of finding the equivalent of such provisions in the language creating the trusts is apparent from the claims that the named beneficiaries took one of several estates other than a fee, all of which are without merit. There is nothing in either the context or surrounding facts or circumstances showing any meaning except that which the language itself expresses, and that meaning is an absolute or fee interest.

■ A beneficiary is not prevented from taking a vested interest in a trust by the provisions of 2 Mason Minn. St. 1927, § 8095, which vest the whole estate in the trustee, in law and equity, subject only to the execution of the trust, and declare that the person for whose benefit the trust was created shall take no estate or interest in the lands but may enforce the performance of the trust in equity. The construction of the statute is settled by our prior decisions that a beneficiary may take a vested interest in a trust. Our rule is in harmony with that of New York, from which our statute was copied and those of other states having similar statutory provisions.

A beneficiary's right to a beneficial interest under a trust may be vested although such interest is given through the intervention of a trustee. In the case of In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365, we held that a gift in trust of a remainder after a life estate vested in the beneficiaries, citing cases from New York and other jurisdictions. In Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663, we held that a gift in trust for the benefit of the testator's granddaughter vested at his death and that in consequence of that fact the gift passed at the granddaughter's death to her heirs and did not revert to the testator's estate. In Merriam v. Wagener, 74 Minn. 215, 220, 77 N. W. 44, 45, we held that while the title and the dominion over the corpus vested in the trustees and the beneficiary took no title or estate to or in the corpus or the property comprising it, the beneficiary had "a vested interest in this trust fund" and that the interest had become vested at the testator's death. Our rule is in accord with the overwhelming weight of authority. Tucker v. Bishop, 16 N. Y. 402; Everitt v. Everitt, 29 N. Y. 39, 40; Stevenson v. Lesley, 70 N. Y. 512; Cammann v. Bailey, 210 N. Y. 19, 20, 103 N. E. 824; Perrin v. Lepper, 72 Mich. 454, 40 N. W. 859; Scott v. West, 63 Wis. 529, 562, 24 N. W. 161, 25 N. W. 18; 1 Scott, Trusts, § 129. Numerous cases supporting the rule are collected in an annotation at L. R. A. 1915C, 1059.

Our decisions which hold that the beneficiary has no title or interest in the specific property held in trust are not inconsistent with this view. The list includes Merriam v. Wagener, 74 Minn. 215, 77 N. W. 44; McWhinney v. Gage, 183 Minn. 141, 235 N. W. 676; First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337; and Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426. The beneficiary may have a vested interest in the trust without having title, legal or equitable, to any specific property held in trust. The question has been argued whether the right of a beneficiary is a mere chose in action consisting of a right *in personam* against the trustee to compel him to perform the trust or whether his rights are of a proprietary, equitable interest in the corpus itself. The authorities are arrayed in hopeless conflict. 1 Bogert, Trusts and Trustees, § 183; 1 Scott, Trusts, § 130. It is not necessary to decide the question now. No claim is asserted to the corpus or any specific property. Plaintiffs claim only the beneficial shares of the trusts, subject to the execution of the trusts according to their terms. Hence it makes no difference for present purposes whether the interest of the named beneficiaries is the ownership of an obligation of the trustee or an interest in the corpus itself. There may be a vested right in a chose in action as well as in corporeal property. After all, as Ames pointed out in "Purchase for Value Without Notice," 1 Harv. L. Rev. 1, at p. 9, the principal difference is in the mode of enjoyment, a right in the thing itself being enjoyed directly by the owner and a right *in personam* through the agency of another by compelling his obligation of performance. Whatever the character of the right, it is capable of vesting.

■ The intention of the donor and the testator determines whether the named beneficiaries took vested or contingent interests in the trust. The entire corpus of the trust was given to the trustees with no direct gifts to the named beneficiaries. The named beneficiaries were to take under the directions to the trustees to divide and pay over the income and corpus among them at the times and in the proportions specified.

A future gift is vested when the right to receive it is not subject to a condition precedent. Where the right to receive the gift is immediate and only the time of payment is postponed, the gift vests immediately. Where the right to receive the gift is postponed until after and is made to depend on the happening of a named event or condition, the gift is contingent and vests in the future. Futurity is then said to be annexed to the substance of the gift. Survival of the donee until the time of payment is a condition precedent to his right to receive the gift. Annotation, L. R. A. 1918E, pp. 1099-1101. A gift is contingent and does not vest until the time or happening of the event named where the only words of gift are a direction to a trustee to pay and distribute or divide and pay over at a future time or upon the happening of a specified event. This is the so-called "divide-and-pay-over rule." In re Trust Under Will of Bell, 147 Minn. 62, 179 N. W. 650. The reason for the rule is that such a direction refers to the future and not to the present and hence can only be executed in the future. Dougherty v. Thompson, 167 N. Y. 472, 60 N. E. 760. The rule has been subject to very severe criticism. 69 C. J. pp. 628-629, § 1721, note 70.

The "divide-and-pay-over rule" is merely a rule of construction and yields to slight evidence of a contrary intention. In Merriam v. Wagener, 74 Minn. 215, 77 N. W. 44, and In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365, there were directions to the trustees to pay and divide but no direct gift to the beneficiaries from the testator. We held that the wills considered as a whole disclosed an intention that the gifts should be vested. The rule is said to furnish valuable aid in ascertaining intention where there is nothing in the instrument creating the trust bespeaking a contrary purpose. Fulton Trust Co. v. Phillips, 218 N. Y. 573, 113 N. E. 558, L. R. A. 1918E, 1070.

In the instant case the directions to divide and pay over do not stand alone. There are not one, but several tokens of intention to give the named beneficiaries vested and not con-

tingent beneficial interests. The rule must yield to these manifestations of a contrary intention.

An intention that the gifts were to be vested may be found in the entire absence of substitutionary gifts to take effect in the event of the death of the named beneficiaries. The inference is thereby made permissible that they were to have the gifts at all events. Fox v. Hicks, 81 Minn. 197, 83 N. W. 538; Johrden v. Pond, 126 Minn. 247, 148 N. W. 112; Fulton Trust Co. v. Phillips, 218 N. Y. 573, 113 N. E. 558, L. R. A. 1918E, 1070; Kelly v. Dike, 8 R. I. 436; Will of Fouks, 206 Wis. 69, 238 N. W. 869; Annotation, L. R. A. 1915C, 1056. See State ex rel. Hale v. Probate Court, 100 Minn. 192, 110 N. W. 865.

A gift to the beneficiary of the interim benefit of the gift such as the entire income or interest before he comes into possession is regarded as strong, and in the absence of a contrary showing conclusive, evidence of intention that the gift is to vest immediately. Cox v. Rusling (3 Cir.) 86 F. (2d) 236; Fuller v. Winthrop, 85 Mass. 51, at p. 60; Tucker v. Bishop, 16 N. Y. 402; Willett's Adm. v. Rutter's Adm. 84 Ky. 317, 1 S. W. 640; Hicks v. Hicks, 99 N. J. Eq. 92, 132 A. 857 (affirmed, 100 N. J. Eq. 346, 134 A. 917); Deacon v. St. Louis Union Trust Co. 271 Mo. 669, 197 S. W. 261; Traverso v. Traverso, 99 N. J. Eq. 514, 133 A. 705 (affirmed, Traverso v. McMillin, 101 N. J. Eq. 308, 137 A. 919); Starrett v. Botsford, 63 R. I. ——, 9 A. (2d) 871. The reason is that in such cases the whole interest in the fund is given one way or another, and that it is not reasonable to think that it was the testator's intention to make the gift contingent where he has given the legatee the entire interest and has only split the gift into parts, one for payment of the interest and another for payment of the principal. Hence the directions are held to relate to the time of payment not to the substance of the gift. Fidelity Union Trust Co. v. Rowland, 99 N. J. Eq. 72, 74, 132 A. 673.

An interim gift of part of the corpus in addition to the income is strong evidence of intention that the beneficiary is

to take a vested interest. Eldridge v. Eldridge, 63 Mass. (9 Cush.) 516, *per* Shaw, Ch. J.; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 A. S. R. 464, and note p. 474; Everitt v. Everitt, 29 N. Y. 39, 76; (see Gluck, *The "Divide and Pay Over" Rule,* in 24 Col. L. Rev. 8); Collier's Will, 40 Mo. 287; Felton .v. Sawyer, 41 N. H. 202, 212; 1 Scott, Trusts, § 128.2, note 1; Benner v. Mauer, 133 Wis. 325, 113 N. W. 663; Harrison v. Grimwood, 12 Beav. 192, 50 Reprint, 1033; Vivian v. Mills, 1 Beav. 315, 48 Reprint, 961; Walker v. Simpson, 1 K. & J. 713, 69 Reprint, 647; Fonnereau v. Fonnereau [1748] 1 Ves. Sen. 118, 27 Reprint, 929.

Where the income is given and the corpus is to be distributed to the beneficiary in instalments or parts at different times, the inference is that a vested gift of income and corpus was intended. Chandler v. Field (1 Cir.) 63 F. (2d) 13. See In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365.

Some courts hold that the "divide-and-pay-over rule" does not apply to gifts to named persons, but does where the gift is to a class, the membership of which is to be determined in the future. Others hold that a gift to a beneficiary by name is evidence of intention that the gift should vest. Warner v. Commr. of Internal Revenue (2 Cir.) 72 F. (2d) 225; In re Estate of Levy, 171 Misc. 431, 435, 12 N. Y. S. (2d) 799; Carroll v. Carroll's Executor, 248 Ky. 386, 58 S. W. (2d) 670; Armstrong v. Barber, 239 Ill. 389, 88 N. E. 246. See In re Trust Under Will of Bell, 147 Minn. 62, 179 N. W. 650.

A large part of the estate consisted of the iron mining properties which were under lease until 1949. It was thought that the Duluth property would increase in value. Where, as here, a sale of property is to be made in the future for convenience of the estate and not out of considerations personal to the legatees, the postponement of the sale does not prevent vesting of the gifts. Robert v. Corning, 89 N. Y. 225; Dorland v. Dorland, 2 Barb. (N. Y.) 63; Annotation, L. R. A. 1918E, pp. 1211-1214.

Numerous authorities supporting the views just stated are collected in an exhaustive annotation in L. R. A. 1918E, pp. 1097 to 1216.

There is other definite evidence of intention that the named beneficiaries should take vested interests. In Article VI of the will annulling the bequest to any beneficiary who should contest the will or distribution thereunder and barring such beneficiary from taking in such event, the testator used the language, "I annul my bequest herein made to such beneficiary." The fact that the testator characterized the provision as a gift or bequest is evidence that he intended the beneficiary to take a vested interest. Paxson's Estate, 241 Pa. 452, 88 A. 673, L. R. A. 1915C, 1009; Roosa v. Harrington, 171 N. Y. 341, 64 N. E. 1; Annotation, L. R. A. 1918E, at p. 1133, note 137. The clause that unaccepted gifts shall be forfeited and become part of the residue contemplated that the acceptance should be by the named beneficiaries. The requirement for the consent of the beneficiaries to a sale of the real estate, while it recognized that they might change before the time of sale, is some indication that the beneficiaries had interests in the trust and were to be consulted for that reason. The provision that the trust estate should vest in the named beneficiaries in the event the trust failed is but an alternative disposition indicating an intention that the named beneficiaries were to have the trust property one way or another by payment and distribution either from time to time as specified under the trusts or immediately if not under the trusts.

Cases involving gifts to members of a class who must be living at the time of distribution or which fix the time of vesting as in the future are not in point. Among them are In re Estate of Jennrich, 197 Minn. 162, 266 N. W. 461, 267 N. W. 143; Levings v. First Nat. B. & T. Co. 192 Minn. 143, 255 N. W. 828; In re Estate of Freeman, 151 Minn. 446, 187 N. W. 411; In re Trust Under Will of Bell, 147 Minn. 62, 179 N. W. 650, and similar cases.

Here the "divide-and-pay-over rule" is not of much assistance in ascertaining the intention. The multiple evidences of intention to give the beneficiaries vested gifts are so numerous as to compel the conclusion that vested and not contingent interests were intended.

■ A beneficiary may devise and bequeath his interest in a trust if it does not terminate at his death, as here, the same as other property. Mayer v. American Sec. & Trust Co. 222 U. S. 295, 32 S. Ct. 95, 56 L. ed. 206; Croxall v. Shererd, 5 Wall. 268, 18 L. ed. 572; Newhall v. Wheeler, 7 Mass. 189; Wessborg v. Merrill, 195 Mich. 556, 162 N. W. 102, L. R. A. 1918E, 1074; Embury v. Sheldon, 68 N. Y. 227; Will of Fouks, 206 Wis. 69, 238 N. W. 869; 1 Bogert, Trusts and Trustees, § 188, p. 527, note 12; 1 Scott, Trusts, § 132.1; Restatement, Trusts, §§ 133 (1) (d) and 140; 68 C. J. p. 495, note 49. The New York, Michigan, and Wisconsin cases are particularly in point since those states have statutes similar to ours. In Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, we held that where a beneficiary who took a vested interest in a trust died intestate such interest passed to the beneficiary's heirs. If such an interest passes by descent, it is subject to testamentary disposition. By implication, at least, we recognized the right to dispose of such an interest by will in Conrad v. Douglas, 59 Minn. 498, 503, 61 N. W. 673.

The development of the rule has been shown by Maitland. He points out that many of the incidents of a beneficial interest and the terms used to describe its extent and duration were found by analogy in the common law. These were ready for use and readily understandable when the law of trusts began to develop. From the very first, chancery adopted the rules of the common law as a model in its dealings with the rights of beneficiaries. He says:

"The beneficiary was treated as having an estate in fee simple, or in fee tail or for life in the use or trust, an equitable estate; or as having a term of years in the use or trust. These estates

and interests were to devolve and be transmitted like the analogous estates and interests known to and protected by the common law. The equitable fee simple would descend to heirs general, the equitable estate tail to heirs in tail, equitable chattel interests would pass to the executors or administrators. In all such matters the analogies of the common law prevailed; the Chancery moulded equitable estates and interests after the fashion of the common law estates and interests"; and "Then again equitable estates or interests, if they are of such a kind that they do not expire with the death of the *cestui que trust*, can be devised or bequeathed by him. Exactly the same solemnities are required of a will that is to pass such an estate or interest as of a will that is to pass the legal estate in land or the legal ownership of goods." Maitland, Equity, pp. 107 and 108. See Holmes, "The Common Law," pp. 407-409, and 1 Scott, Trusts, § 142.

■ The claim of *res judicata* is based on an order of the district court in the matter of the living trust confirming certain payments to assignees of the owners of beneficial interests in the trust. One assignment was by the heirs at law of Frank Russell, a named beneficiary who died after the testator. The other assignment was by Charles H. Thornton, a named beneficiary, to his sister. He was living at the time the order of confirmation was made. Counsel informed the court that all that the trustee wanted was to have the payments already made by the trustees to the assignees confirmed. The only question involved was whether the assignments were sufficient authority for the payments by the trustees. An assignment will protect the trustee against a demand by a beneficiary for payments made under his authority. Heise v. Wells, 211 N. Y. 1, 104 N. E. 1120; Welch v. Welch, 235 Wis. 282, 293 N. W. 150. The construction of the trusts, whether the named beneficiaries took fee or life interests and whether such interests were vested or contingent, was not litigated or decided.

The question of *res judicata* is not in the case unless the evidence requires a finding to that effect as a matter of law for the reason that the court below failed to find on this question. See Blume v. Ballis, 207 Minn. 393, 395, 291 N. W. 906. *Res judicata* does not appear as a matter of law for the reason that the matters now claimed to have been determined by the former order were not litigated or adjudicated. Maryland Cas. Co. v. Baune, 184 Minn. 550, 239 N. W. 598. Nor could the order in any event bind the state, since it was not a party to the proceedings in which the order was made. Ingelson v. Olson, 199 Minn. 422, 272 N. W. 270, 110 A. L. R. 167.

The proceedings did not involve the testamentary trust. The matter was heard as a default. There was no jurisdiction of the subject matter as to the testamentary trust. Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L. R. A. (N. S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348.

■ There was no finding below that there was a practical construction of the trusts by the parties, and the question can be considered here only on the same basis as we considered the question of *res judicata*.

The rule of practical construction is based upon the principle that the parties to an instrument may adopt their own interpretation of obscure or doubtful provisions and as between themselves render clear and certain what their language has left in ambiguity. Investors Syndicate v. Baskerville Bros. Holding Co. 200 Minn. 461, 274 N. W. 627. In support of practical construction respondents urge that it appears that Joseph D. Conan joined in the petition of the trustees to have their accounts allowed and their acts confirmed in which there is an allegation that Frank Russell's heirs took not under his will but under the trust instrument as the parties to succeed to his interest; that Joseph D. Conan's personal representatives failed to include in the inventory any interest in the William J. Conan trust; that Rachel Conan Charney in a petition for inspection of the trustees' accounts and records stated that she was one of the beneficiaries of the living trust; and that the

interest of Grace Merrill, one of the beneficiaries of the living trust, was handled by the trustees the same as that of Frank Russell in that it was transmitted not by succession through her but under the trust deed to her heirs as purchasers.

In all this there is no showing that all the parties, not even all the trustees, construed the provisions in question or that there was a course of conduct based upon a construction such as is claimed. Certainly isolated acts of the kind mentioned cannot bind persons who were not parties to any such acts. Furthermore, there is no claim that the state was a party to any such construction, nor could such a construction prevail to prevent the collection of inheritance taxes. State v. Brooks, 183 Minn. 251, 236 N. W. 316.

The evidence that there was no practical construction prevents us from saying as a matter of law that the facts require a finding of practical construction. To be mentioned not as an all-inclusive enumeration are the facts that Joseph D. Conan by his will dated October 30, 1936, 15 days before he signed the trustees' petition, disposed of his interests under the trusts as property belonging to him in fee; that the trustees paid gift and inheritance taxes on the interests passed by both trusts upon the basis that the beneficiaries named took fee rather than life interests, the tax on Joseph D. Conan's interest being $20,519.28 in the case of the living trust and $42,-180.91 in the case of the testamentary trust; that Charles H. Thornton, one of the beneficiaries, assigned to Frances M. Thornton his interest under the trusts as if he owned it in fee and the trustees recognized the assignment; and that three other beneficiaries of the living trust, Irwin A. Smith, Grace Merrill, and Frank Russell, disposed of their interests in the trusts by will, the first two by specific mention of their interests in their respective wills and the last named by a residuary clause which comprehended such interests under the principles of Baumann v. Katzenmeyer, 204 Minn. 240, 283 N. W. 242, 120 A. L. R. 627. Added to all these is the most significant fact that there was no showing that the parties

had ever among themselves adopted the claimed construction. The whole matter looks too much like an afterthought to bolster up the claims of the respondents to merit further consideration.

We have examined and considered the innumerable authorities cited by counsel. It would unduly extend the opinion to comment on them. Suffice it to say that those which are not referred to in the opinion do not hold that a different result should be reached where the facts are the same as they are here.

Our conclusion is that Joseph D. Conan took absolute and vested interests in the William J. Conan trusts which he could devise and bequeath.

Order reversed with directions to proceed in accordance with the views expressed in this opinion.

MR. JUSTICE LORING took no part in the consideration or decision of this case.

