# IN RE TRUST CREATED BY WILL OF CHARLES SILVERSON.
## CHARLOTTE SILVERSON FOREMAN AND OTHERS v. CHARLES TANEY SILVERSON.[1]

February 19, 1943.

No. 33,298.

*Fowler, Youngquist, Furber, Taney & Johnson* and *Ralph H. Comaford,* for appellant.

*Erickson & Graff* and *Thomas O. Streissguth,* for respondents Charlotte Silverson Foreman and Oliver C. Foreman.

LORING, JUSTICE.

This proceeding involves the construction of the will of Charles Silverson, who died testate in 1912. The testator was possessed of considerable property, consisting largely of stock in the Eagle Roller Mill Company of New Ulm, Minnesota. He was survived by his wife, their son, Charles Taney Silverson, who was then three years old, and two daughters by a previous marriage, Katherine and Charlotte, who were 35 and 28 years of age respectively

[1]Reported in 8 N. W. (2d) 21.

at the time of his death. Katherine was married in 1899. She died in 1941 without issue, her husband, Robert J. O'Donnell, having predeceased her. Charlotte was married in 1916, her name now being Charlotte Silverson Foreman. She was 57 years of age at the time the issues were joined and was childless. Charles Taney Silverson was at that time 33 years of age.

The will, after making devises and bequests to the testator's wife and his sisters and providing that the income should go to his children until final distribution, created a trust in the executors and trustees to hold the common stock in the mill for a defined period, after which they were directed to divide the estate "into three equal parts," one for the son "until he reaches the age of twenty-five years." Each of the other parts was to be held in trust "for and during the lifetime" of each daughter, who was to receive the income from her share. In the event of her death, each daughter's share was to go to her living descendants. If there were no descendants, she was forbidden to bequeath her husband more than $1,000, and the whole of her share "shall pass equally" to the surviving daughter and the son; but "if either of them be dead without leaving living descendants the whole * * * shall pass to the survivor." The division of the estate "not otherwise disposed of" has been made and the three separate trusts set up. The one to the son has terminated by "full and final settlement," and payment has been made to him, he having passed the age of 25.

The dispute here is as to what disposition should be made of the corpus of either daughter's trust in case one of them died without issue. The daughter Katherine having died without descendants, it is the contention of the son that the will should be construed to be ambiguous and that extrinsic evidence is therefore admissible to show testator's intent that his share of Katherine's trust be paid to him absolutely; that Charlotte's share be held in trust for her during her lifetime as provided as to her original share; that after Charlotte's death, if without issue, it should go to him the same as the share originally placed in trust for him.

The trustee petitioned the district court for instructions as to the disposition of this part of the estate, and both Charles and Charlotte answered. Charles's answer and petition included allegations that both Robert J. O'Donnell, Katherine's husband, and Oliver C. Foreman, Charlotte's prospective husband at the time the will was made, were personally known to testator and that it was his intent to prevent either son-in-law from exercising any control and from obtaining title to any portion of the corpus of his estate other than the aforementioned $1,000. Charlotte and her husband moved to strike these allegations. The motion was granted for the reason that the court regarded the will as unambiguous and that consequently extraneous evidence could not be received as to testator's intent. This appeal was taken from the order granting the motion.

Identically the same provisions were made for the disposition of the corpus of the trust established for each daughter in case of her death. In the case of Katherine, it read as follows:

"Tenth:—When the time arrives that my Executors and Trustees can under the powers given to them under Item Fifth of this Will, make a sale of my stock in the Eagle Roller Mill Company, they shall divide my estate, not otherwise disposed of, into three equal parts either in kind or in money, and they shall hold one of said parts in trust for and during the lifetime of my daughter Katherine O'Donnell * * *. They shall pay the entire income of such part to my daughter Katherine O'Donnell during her life, and after her death they shall pay any sum that may be due to her husband under the exercise by her of the power above given, and the balance of such part they shall pay to her children, share and share alike, children of deceased children to represent their parents. If she should not leave descendants living at the time of her death, the whole of said Katherine O'Donnell's share shall pass equally to my daughter Charlotte M. Silverson and to my son Charles Taney Silverson. If either of them be dead without leaving living descendants, the whole of said Katherine O'Donnell's share shall pass to the survivor."

The will, after providing for the widow and testator's sisters and the payment of the income from the remainder of the estate to his children for ten years, or until his brother consented to a sale of the mill company stock, clearly provided for a separation of the remaining property into three distinct parts and created distinct trusts for each part, though the trustees of all of them were the same. It defined the property that was to go into each and its duration, which in the case of the daughters was for the lifetime of each and in the case of the son until he should reach the age of 25 years, when the corpus of the share of the estate which had been placed in his trust was to be paid over to him in "full and final settlement." There is no provision in the will that upon the death of either sister the share of the corpus of the decedent sister's trust, which goes to the surviving sister, should be added to the corpus of the trust of the survivor. It is such a provision that appellant seeks to have read into the will by the introduction of extrinsic evidence which he proposed to introduce in support of the allegations which the trial court struck out.

It is fundamental that the intention of a testator must be sought in the language of his will; and, if that is clear, what he meant to say and did not or what he might have said if he had thought of it is foreign to the inquiry. As said by this court in In re Estate of Chase, 182 Minn. 271, 274, 234 N. W. 294, 295:

"No violence must be done to the language used. Except in cases of equivocation and in some cases of ambiguity, parol evidence, in the sense of declarations of the testator directly expressing his testamentary intentions, is not admissible. To admit it is to ignore the requirement that the will be in writing. [Citing numerous cases.]

"We therefore do not resort to the declarations referred to in interpreting this will but take it by the four corners and read the document as a whole. So read there is no ambiguity nor equivocation."

Therefore, if by reading the will as a whole we discover no am-

biguity or equivocation, there is no room for extrinsic evidence that testator meant to say something more than he did and that such intention should be given the force of testamentary disposition. Testator evidently was a man of large business capacity. He had ample means to obtain the best legal advice. It would have been very easy for him to add appropriate language had he intended that Charlotte's share of Katherine's estate should be added to the third part which had been placed in trust for Charlotte, thus excluding the possibility that Charlotte's husband might inherit this minor fraction of the estate. It is true that he limited Charlotte's husband to $1,000, which she might provide for him by will "upon final distribution of the *part of my estate set aside* for her, as provided hereinafter." This provision applied only to the distribution of the third part of his estate set aside for her.

Without language limiting the provision that the whole of Katherine's share shall pass equally to Charlotte and Charles, it clearly means that the outright title shall pass. It may be that the testator disapproved of his son-in-law and prospective son-in-law and that he entertained a desire that they should not under any condition share in any part of his estate, even that which in default of descendants of the deceased sister went to the surviving sister, but he did not so express himself.

Appellant earnestly contends that the use of the words "shall pass," without further amplification, is ambiguous, since the same words when used elsewhere in the will were connected with qualifying words making clear, so he asserts, the testator's intention; that as here used they should be interpreted to pass to Charlotte only a life interest in the corpus of Katherine's trust and not an absolute gift of the corpus. We do not agree with this contention. If the language in a will clearly purports to pass an estate or interest, it will not be construed as passing a lesser interest than an absolute estate, unless there is clear, plain, and unequivocal language showing an intent to pass such lesser estate or interest. The same rule applies to both personalty and realty. First

318

& American Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585, and cases cited. There is no language in this will limiting the interest of the surviving daughter to a life estate in the corpus of the other's trust if one should die without leaving living descendants, nor is there language incorporating such property into the trust created by the previous provisions of the will. In the absence of such language, the will is not ambiguous, and extrinsic evidence may not be received to show a different intent from that expressed. An absolute interest in the corpus of Katherine's trust should pass equally to Charlotte and Charles.

The order appealed from is affirmed.